**April Menise GANT, Appellant,**

v.

**Frank GANT, Jr., Respondent.**

**No. WD 51555.**

Missouri Court of Appeals,
Western District.

Submitted April 17, 1996.

Decided June 11, 1996.

David L. Neuhaus, Kansas City, for appellant.

Cynthia R. Powers, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

The issues presented in this dissolution action concern the award of child custody and the visitation schedule. April Gant appeals from the trial court's award of child custody in which the court awarded joint legal custody of the minor children and named Frank Gant as the primary residential custodian. On appeal, April Gant claims that (1) the trial court abused its discretion by awarding primary physical custody to Frank Gant in light of the evidence of domestic violence; and (2) the trial court abused its discretion in its order of visitation.

Judgment is affirmed.

Frank ("husband") and April ("wife") Gant were married on February 28, 1991. They already had one child, a son, "Frankie," at the time of their marriage. On December 30, 1992, they had their second child, a daughter. The parties separated on June 10, 1993. At that time the children were approximately three and one years of age. On August 9, 1993, wife filed her petition for dissolution. Husband filed his answer and counter petition on September 2, 1993. On September 9, 1993, the trial court entered a temporary visitation order stating that the parties would have shared custody of the children alternating every two weeks until the hearing. A hearing was conducted on November 22, 1993. The sole issue before the trial court was the custody of the minor children. Prior to the hearing, the parties resolved all other issues, including marital property division and debt apportionment.

At the hearing, wife testified that she was living in St. Paul, Minnesota with her parents. She stated that she intended to move into an apartment as soon as she could find a job in her field of training. Wife is a recent college graduate and she works for the Rivertown Trading Company. Wife's mother is a licensed day care provider and runs her own day care center out of her home. During wife's two week visitation periods, her mother cared for her children, while wife worked. Wife's father has been a fire fighter for eleven years. Her parents previously had a drug problem, but the testimony was that they sought professional help and have not used drugs since 1988.

Wife maintained that husband was not a fit and proper person to have custody of the children. Wife stated that husband had a violent nature and was emotionally unstable. During the course of the marriage, wife stated that husband had damaged numerous items during fits of rage, including smashing two wrist watches with a baseball bat; smashing a television set with a chair; smashing a boom box radio with a baseball bat; slicing up a baseball cap with a box cutter; smashing an alarm clock; and punching a closet door until it splintered. She testified that sometimes during arguments, husband grabbed her by the arm or "smacked up on her." According to wife, on one occasion, husband had ripped her pajamas when he grabbed her by the arm and in the process his finger poked her in the

eye and broke a blood vessel. Wife also claimed that one time husband grabbed her by the face and pushed her over the arm of a couch while she was holding her six-month-old baby. She claimed that husband had often threatened her physically and threatened to kill her ten to twelve times throughout the marriage. She claimed that husband had been physically violent with at least three other men before and during the marriage. Wife claimed that husband raped her a number of times during the marriage. She further claimed that husband had told her approximately fifteen times during their relationship that he wanted to kill himself.

Husband admitted to some of wife's assertions, but disputed much of wife's testimony. Husband admitted that he smashed the watches, radio, television and alarm clock. He admitted that he had gotten into some fights with other men. Husband denied wife's allegation that he threatened to kill her ten to twelve times. He admitted that on one occasion he stated that sometimes she made him want to kill her. He denied that he ever was suicidal or that he told wife he was going to kill himself. He admitted that he sometimes told wife that "he didn't want to be here." He stated that he made these statements because it was a way of getting her to pay attention to him. He admitted that he had poked wife in the eye, but said it was an accident. He also admitted holding wife by the jaw and tilting her back on the couch, but he claims that she was not holding their infant at the time. Husband testified that he never hit wife. He denied ever raping wife. He testified that he had changed and admitted that his past behavior was childish.

Husband testified concerning wife's alleged unfitness. Husband claimed that wife lied to him continually, which wife admitted. Twice wife came to Kansas City from Minnesota and took the kids back to Minnesota without telling husband of her intentions. Husband testified that throughout the marriage he typically did all the cleaning, laundry, and the majority of the cooking. Both parties were in school full time and worked. He testified that wife would tell him she was lazy and when he asked her to start helping with some of the chores, she replied that she would try, but she never did. He testified that he was concerned about how wife handled the children's hygiene. He stated that sometimes she would not give them a bath for four days and she sometimes failed to brush their teeth everyday. He was concerned about the food wife fed the children. After the separation, husband testified that the children would often come home after visiting their mother sick with colds, ear infections or diaper rashes. After one visit with his mom, Frankie would not mind his father. Frankie was talking "street talk" and referring to women he saw on television as "sexy." Husband testified that he took an active role in raising his kids. He stated that during one seven month period while he was unemployed he stayed home and was the primary caretaker of the children.

Brenda Wesley, the children's "nanny," testified that she had a close relationship with both husband and wife. She also testified that the kids would often come back from their visits with their mom sick and that they generally looked like they had lost weight. She stated in her opinion that the interests of the children would be best served if husband had primary physical custody of the children. She claimed that she had never seen a 25 year old man take better care of his kids than husband had done.

On December 29, 1993, the trial court entered its order granting the parties joint legal custody, naming husband as the primary custodial parent and granting wife specific visitation. Wife filed an appeal from the trial court's order. On February 7, 1995, this court remanded the case and instructed the trial court specifically to find whether a "pattern of domestic violence" occurred as that term is used in § 452.375.2(5), RSMo 1994. *Gant v. Gant*, 892 S.W.2d 342 (Mo. App.1995). This court directed that if the trial court found that there was a pattern of domestic violence, and if the court again awarded custody to husband, the court was instructed to enter specific findings of fact and conclusions of law as required by § 452.375.2(5). On remand, the trial court found, *inter alia*, that (1) domestic violence occurred; (2) husband had changed and had

either become less violent or had learned to control his temper; (3) primary physical custody should be awarded to husband even considering the past history of violence; and (4) the violence was not recent, nor was it ever directed at the children. The court also stated that it disbelieved wife's assertion that she feared husband because it was inconsistent with her actions. Wife appeals.

### Child Custody

Wife claims that the trial court abused its discretion in awarding primary physical custody of the minor children to husband where the evidence revealed that husband had perpetrated numerous acts of domestic violence and often threatened to commit suicide. Wife asserts that the evidence revealed that she was a fit and proper person to have primary custody and that husband was uncontrollably violent and emotionally unstable.

This court will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence and reasonable inferences to be drawn therefrom are viewed in the light most favorable to the trial court's decision, disregarding contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The trial court is in the best position to judge the credibility of the witnesses and may believe all, part or none of any witness's testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

■ In making a custody award, the trial court is to consider the factors enumerated in § 452.375.2, including:

(1) The wishes of the child's parents to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

Wife agrees that the trial court is to consider all the above enumerated factors when making an award of child custody. Wife claims that the trial court's judgment failed to give any weight whatsoever to the evidence of domestic violence in this case despite the overwhelming uncontradicted evidence in that regard. Wife argues that in cases where domestic violence is proven, a legal presumption arises that custody of minor children should be with the non-violent parent, unless other evidence is introduced to overcome the presumption. Wife cites no authority for her view of this procedure. We agree that instances of domestic violence are to be viewed as important; however, we do not agree that we can codify the weight to be given the various factors. What is needed is a reasonable decision in light of all the relevant factors, giving substantial weight to domestic violence and any other factor affecting the welfare of the children.

■ We note that husband admitted that he had smashed items of personal property and he had gotten into fights with various individuals. He admitted that he sometimes stated to wife "that he wished he was not here." He stated that he did this to get her to pay more attention to him. He admitted physical incidents with wife and in wife's

presence which were highly improper, although his version of some of the details differed. He admitted that these activities were wrong and childish behavior. He testified that he had changed. He testified that he loved his children and wanted to be their primary custodian.

The trial court found, in its specific findings, that husband was learning to exercise more self control. The court also found that the incidents of violence were not recent and were not directed at the children, and that there were reasons to grant husband primary physical custody. The uncontradicted evidence was that husband was a good homemaker—he did the majority of the household chores and cooking throughout the marriage. The evidence indicated that wife was lacking in child care skills. The evidence showed that husband was better aware of the daily needs of the children. He was concerned that wife bathed the children infrequently, failed to brush their teeth daily, and didn't always feed them the appropriate food for their age. Testimony was presented from which the trial court could find that husband showed more of a willingness to make the children available to wife for visitation than wife would for husband. Wife testified that she had moved to Minnesota. She stated that she did not own a car and that it would be difficult for her to transport the children back and forth for visitation. Wife sought sole custody, whereas husband sought joint custody.

This court concludes that the trial court did consider the evidence of domestic violence in this case. After doing so, the trial court found that the interests of the children would be best served in husband's physical custody. We have no reason to doubt that the trial court considered the incidents of violence in question to be quite serious. The trial court also had the opportunity to see the parties testify. The trial court is in the best position to judge the credibility of the witnesses and to assess the character of the parties. The court may believe all, part or none of any witness's testimony. *Herbert,* 757 S.W.2d at 587. The trial court may have been significantly influenced by the testimony of the children's "nanny" as well as by the testimony of husband, concerning husband's attention to the needs of the children and wife's alleged lack of attention thereto. We cannot convict the trial court of error for awarding the primary residential custodianship to husband in light of all the evidence presented in this case.

### *Visitation*

Wife also claims that the trial court abused its discretion when it ordered visitation for wife one week of every sixth week and alternating holidays. Wife suggests that this court has the power to change the trial court's custody decree if it determines that visitation with a non-custodial parent is of unreasonable frequency or duration, citing *In re Marriage of Powers,* 527 S.W.2d 949 (Mo. App.1975). Wife claims that since the children are not yet in school, the visitation schedule was unreasonable. We fail to see that it is unreasonable. Wife now resides in Minnesota. She expressed the view that it would be difficult for her transport the children to husband for visitation very often. In the decree, the trial court found that if wife moved back to Kansas City, she would be able to have visitation every other weekend. Point denied.

Judgment is affirmed.

All concur.