**Lavonne M. LOUMIET, Appellant,**

v.

**James R. LOUMIET, Respondent.**

**No. WD 61023.**

Missouri Court of Appeals, Western District.

March 25, 2003.

David G. Sperry, Kimberly Carlin, Independence, for appellant.

John W. Dennis, Jr., Michael J. Albano, Independence, for respondent.

Before NEWTON, P.J., and ULRICH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Lavonne M. Loumiet appeals from the dissolution judgment of the Circuit Court of Jackson County awarding, *inter alia*, her and the respondent, James R. Loumiet, joint physical and legal custody of their two minor children.

The appellant raises three points on appeal. In Point I, she claims that the trial court erred in awarding "primary residential custody" of the parties' minor children

to the respondent because its requisite statutory finding in support of the award, that it was in the children's best interests, § 452.375.2,[1] was against the weight of the evidence in that the "[appellant] testified to a long history of emotional and domestic violence that had been inflicted upon her and the children." In Point II, she claims that the trial court erred in awarding physical custody of the parties' minor children because in doing so, it was required, but failed, to make the findings mandated by § 452.375.2(6) and § 452.375.13 [2] in that the court found three separate incidents of domestic abuse by the respondent against the appellant. In Point III, she claims that "[t]he trial court erred in entering its judgment and decree of dissolution of marriage because the trial court's judgment and decree is against the case law in that the trial court's findings of fact on the record as to custody and maintenance award is antagonistic, inconsistent or contradictory."

Reversed in part and remanded, and dismissed in part.

## Facts

The parties were married on March 8, 1985, in Independence, Missouri, and separated on May 5, 1999. Two children were born of the marriage, Jennifer, born December 8, 1985, and Joshua, born May 11, 1988. On May 18, 1999, the appellant filed a petition for dissolution of marriage in the Circuit Court of Jackson County. The respondent filed an answer to the appellant's petition and his cross-petition for dissolution of marriage on July 2, 1999. With respect to child custody, both parties asked the trial court to award them joint legal and sole physical custody.

The petition and cross-petition were heard by Family Court Commissioner Sherrill L. Rosen over four days on August 27, September 4, September 5, and November 2, 2001. At trial, evidence was introduced as to several instances where the respondent physically abused the appellant by shoving her and kicking her. There was also extensive evidence as to the appellant's immaturity and poor parenting skills. At the close of all the evidence on November 2, 2001, the case was taken under advisement.

Commissioner Rosen issued her "Findings and Recommendations" on January 8, 2002. On that same day, the Honorable Marco A. Roldan entered his judgment and order adopting Commissioner Rosen's findings and recommendations. The court's judgment dissolving the marriage ordered, *inter alia*, that the parties were to receive "joint legal and physical custody of the minor children ... with [the respondent's] residence designated as the children's for educational and mailing purposes." As to its award of custody, the court expressly found that there were three instances of abuse by the respondent against the appellant during the marriage, but did not find that there was a pattern of domestic violence.

This appeal follows.

## Standard of Review

■ Our standard of review, as in other court-tried cases, is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976). *Miers v. Miers*, 53 S.W.3d 592, 595 (Mo.App.2001). As such, we must affirm the judgment of the trial court unless there is no substantial evidence to support

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. In her brief, the appellant incorrectly referenced § 452.375.2(5) and § 452.375.12, both of which were renumbered as § 452.375.2(6) and § 452.375.13 in 1998.

it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

As to an award of child custody, the trial court is granted broad discretion, and its decision will be affirmed unless the appellate court is firmly convinced that the welfare of the child requires a different disposition. *Stangeland v. Stangeland,* 33 S.W.3d 696, 703 (Mo.App.2000). In reviewing an award of custody, we presume that all evidence was considered by the trial court. *Id.* In our review, we view the evidence in the light most favorable to the trial court's judgment. *Id.*

## I.

In Point I, the appellant claims that the trial court erred in awarding "primary residential custody" of the parties' minor children to the respondent because its requisite statutory finding in support of the award, that it was in the children's best interests, § 452.375.2, was against the weight of the evidence. Specifically, she claims that the trial court's award of custody based upon a finding that it was in the children's best interests was against the weight of the evidence in that the "[appellant] testified to a long history of emotional and domestic violence that had been inflicted upon her and the children."

In order to clearly understand the appellant's claim in this point so that we can fully address it, we first must ascertain the precise aspects of the trial court's award of physical custody that she is attacking.[3] In that regard, she claims that the court's award of "primary residential custody" was against the weight of the evidence.

This characterization of the trial court's physical custody award gives us pause on two fronts: (1) § 452.375, governing "[c]ustody of children" in this state, makes no mention of primary residential custody; and (2) the trial court did not make an award of "primary residential custody" of the parties' minor children, but rather, awarded them "joint legal and physical custody of the minor children ... with Respondent's residence designated as the children's for educational and mailing purposes."

Section 452.375.1(1) defines "custody" as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof."[4] "Joint physical custody" is defined as:

[A]n order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents.

§ 452.375.1(3). "Sole physical custody" is not defined. In light of that fact and given the definition of joint physical custody, it would seem logical then that joint physical custody would encompass any custodial arrangement in which both parents are awarded significant periods of time during which the child resides with or is under the care and supervision of each parent, and sole physical custody would encompass custodial arrangements in which one of the

---

**3.** If the appellant had favored us with the precise relief she is seeking, as required by Rule 84.04(a)(6), our divining of her claims would have been rendered a much easier task.

**4.** "Third party custody," as defined in § 452.375.1(4), does not refer to a separate and distinct type of custody as does joint physical, joint legal, sole physical or joint legal custody. Rather, it refers only to the party designated to receive custody.

parents is not awarded significant periods of custodial time. Thus, the determining factor in classifying physical custodial arrangements as either joint or sole is whether the periods of physical custodial time awarded to the parents is deemed "significant."

What constitutes significant periods of custodial time for purposes of joint physical custody is not defined, but is apparently left for the trial court's determination. This, of course, could lead to identical physical custodial arrangements being categorized differently from trial court to trial court, in that a period of custodial time that is significant to one court might be deemed insignificant by another. While we can envision an award of physical custody to a parent that reasonably could not be classified as a significant period of custodial time, the fact that the trial court nonetheless classified its award as being joint physical custody would not be an error of any great consequence under our statutory scheme of child custody, except to the extent it could be successfully argued that in denominating its award of physical custody as joint, the trial court was duty-bound to award greater periods of custody to the complaining parent than was actually awarded. However, such an argument would be tantamount to the tail wagging the dog inasmuch as the court's designation of its award of physical custody should logically come only after it has determined the appropriate periods of custodial time to award. The approach suggested is logical in that the paramount issue for the court to determine in determining physical custody is what periods of time each parent should receive in carrying out the public policy of this state with respect to child custody and not what to call the arrangement after that task is completed. In addition, although the denomination of the physical custody that a parent is going to be awarded in a custody proceeding can have some intrinsic value to that parent in that he or she believes that some stigma attaches to a parent where the other parent receives sole physical custody in that it is an implicit indictment of the non-custodian's parenting skills, the ultimate concern should be what actual time the child will be residing with or under the care and supervision of the parent. Thus, it is logical that the periods of time each parent is to have custody of the child should drive the designation of the custodial arrangement as either joint or sole, and not the reverse.

As to other consequences, under the provisions of § 452.375, the designation of an award of physical custody as being joint or sole means little, except in the resulting denomination of the parent's status as a custodian and the denomination of the custody and visitation schedules in the approved parenting plan. In that regard, a physical custody arrangement denominated by the court as joint would result in each parent being properly referred to as "joint physical custodian" and the schedule setting forth each parent's time with the child being dubbed a "joint physical custody schedule." On the other hand, a physical custody arrangement denominated by the court as sole would result in the parent receiving sole physical custody being properly referred to as the "sole physical custodian" and the other parent being properly referred to as the "non-custodian," and the schedule setting forth the periods of time awarded to the non-custodian being a "visitation schedule." Section 452.400.1 makes it clear that visitation is to be ordered only where a parent is "not granted custody of the child." Thus, where the parties are awarded joint physical custody, there is no visitation schedule, only a joint physical custody schedule; and conversely, where one parent is awarded sole custody, there is not a joint custody schedule, only a

visitation schedule setting forth the periods of time the child is to reside with the other parent, the remaining time reserved to the sole physical custodian, unless third-party custody under § 452.375.1(4) dictates otherwise.

There has been a tendency in the culture of physical custody to refer to some physical custodial arrangements as "primary physical custody" and some parents as "primary physical custodians." These phrases have been used to describe custodial arrangements that would properly be classified as either joint or sole physical custody arrangements. In the context of joint physical custody, "primary physical custody" is sometimes used to describe the custodial award where, although both parents are awarded significant periods of custodial time, one receives substantially more time, and "primary physical custodian" is used to describe that parent. The fact that this phraseology is sometimes employed on both sides of the equation is confusing. In addition, given the stigma that some parents attach to one parent being designated the primary custodian or sole custodian, to allow the use of "primary custody" or "primary custodian" in a joint physical custody arrangement would, in effect, allow one of the perceived evils sought to be eradicated by the use of joint physical custody plans and the accompanying terminology. Thus, it would seem appropriate to abandon the "primary" nomenclature in custody cases and employ the joint and sole terminology discussed, *supra.*

With the foregoing discussion of physical custody concepts and terminology to guide us, we now turn to the issue of what aspects of the trial court's award of joint physical custody the appellant is actually challenging in this point when she refers in her point relied on to the court's award of

"primary residential custody" to the respondent.

In awarding joint physical custody in our case, the trial court ordered that:

[t]he children shall reside with [the respondent] except at the following specific times when the children shall reside with [the appellant]:

### Weekday and Weekend Schedule

a.  Every other weekend from 6:00 p.m. Friday until 6:00 p.m. Sunday

b.  Every Tuesday evening each week, after school or 3:30 p.m. to 8:00 p.m.

### Summer Schedule

a.  For six consecutive weeks during the children's summer vacation from school. [The appellant] shall give [the respondent] written notice by April 1st as to the dates of the summer residence time desired with the children. [The respondent] shall have alternate weekend residence time with the children from 6:00 p.m. Friday until 6:00 p.m. Sunday during the summer schedule. [The appellant] and [the respondent] shall [*sic*] each be entitled to a two week uninterrupted period for the purpose of taking a vacation with the children.

### Holiday Schedule

a.  On the following holidays in even-numbered years:

1.  Easter weekend, 6 p.m. Friday to 6 p.m. Sunday

2.  4th of July, from July 3rd, 6 p.m. to July 5th, 6 p.m.

3.  Thanksgiving, 6 p.m. Wednesday to 6 p.m. Sunday

4.  Christmas Day, 9 a.m. to 8 p.m.

b.  On the following holidays in odd-numbered years:

1. President's Day weekend, 6 p.m. Friday to 6 p.m. Monday

2. Memorial Day weekend, 6 p.m. Friday to 6 p.m. Monday

3. Labor Day weekend, 6 p.m. Friday to 6 p.m. Monday

4. Christmas Eve Day, 9 a.m. to 8 p.m.

c. The children shall be with the [respondent] each year on Father's Day from 9:00 a.m. to 8:00 p.m., the above schedule notwithstanding.

d. The children shall be with the [appellant] on Mother's Day from 9:00 a.m. to 8:00 p.m., the above schedule notwithstanding.

e. Jennifer's birthday in odd numbered years, and Joshua's birthday in even numbered years, 9 a.m. to 6 p.m. unless the child's birthday is on a school day in which case, it shall be on the Saturday nearest to the birthday, 9 a.m. to 6 p.m. when the [appellant] does not have parenting time.

### Winter and Spring Vacations

a. The [appellant] shall have parenting time with the children during spring break in even numbered years at 6 p.m. the day school ends until 6 p.m. the day before school resumes.

b. The [appellant] shall have parenting time with the children during winter break in odd numbered years from 6 p.m. the day school ends until December 24th at 9 a.m., and in even numbered years from December 25th, 8 p.m. until 9 a.m. New Year's Eve Day.

Thus, although the trial court awarded the parties joint physical custody, there can be no doubt that the respondent received a greater share of the physical-custody pie than the appellant, to which she objects on various grounds.

■ While § 452.375 does not speak in terms of primary, residential, or primary residential custody, it does provide, in the case of an award of joint physical custody in combination with either an award of joint legal or sole legal custody, that the "residence of one of the parents shall be designated as the address of the child for mailing and educational purposes." § 452.375.5(1), (2). In accordance with the statute, the trial court here designated the respondent's residence as the address of the parties' children for mailing and educational purposes. It most likely was this designation, combined with the respondent's receiving a greater share of the children's physical custody, that prompted the appellant's use of the phrase "primary residential custody" in describing the trial court's award of custody that she is attacking in Point I. However, the mailing and educational residence designation has no bearing on that which the appellant is apparently appealing, the respondent's being awarded a greater share of the children's physical custody, in that the designation is not controlled by which parent was awarded the greater share of the physical custody of the child. In that regard, neither subdivision (1) or (2) of § 452.375.5 requires that the residence of the parent with whom the child is to reside for the greater period time is to be automatically designated the "address of the child for mailing and educational purposes." As noted, *supra*, which parent, if any, is to receive the greater custodial time with the children is reflected in the joint physical custody schedule contained in the parenting plan approved by the trial court. Thus, in light of the appellant's point relied on and argument thereon, our review is not centered on whether the respondent's residence was correctly designated the children's address for mailing and educational purposes or whether the trial court's designation of the ordered

physical custodial arrangement was proper, but whether, under the evidence presented, the appellant should have been awarded a greater share of the children's physical custody than the respondent.

■ In claiming that the trial court's award of physical custody was against the weight of the evidence, the appellant focuses on the court's best interests determination, which is a prerequisite to an award of custody. § 452.375.2. In determining a child's best interests, § 452.375.2 requires that the trial court consider all relevant factors, including the eight factors enumerated in that subsection, which are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Where, as here, the parties do not agree to a custodial arrangement, § 452.375.6 requires the trial court to:

[I]nclude a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

In accordance with § 452.375.6, the trial court here made written findings detailing the relevant factors it relied upon in entering its award of joint physical custody.

In claiming that the trial court's award was against the weight of the evidence, the appellant solely relies on the fact that she testified "to a long history of emotional and domestic violence that had been inflicted upon her and the children." In claiming as she does, the appellant assumes that her testimony, in its entirety, as to the domestic abuse inflicted on her by the respondent was found credible by the trial court and that it should have outweighed the other relevant factors considered by the trial court in determining physical custody. As to the former, the record does reflect that the trial court found in its judgment, as to factor (6) of § 452.375.2, that the respondent had committed several acts of domestic violence against her, finding that:

17. The Court has considered the mental and physical health of all individuals involved, including any history of abuse.

While there were approximately three incidents of abuse by [the respondent] against [the appellant], the last being in September, 1999, the Court does not find that there was a pattern of domestic violence. Since then, the parties have dealt with each other in a reasonable fashion, and the Court's parenting plan orders custody and visitation rights[5] in a manner that protects the [appellant] from any further harm.

As to any further abuse claimed by the appellant, the trial court was free to disbelieve the appellant's testimony in that regard, *In re Marriage of Cranor*, 78 S.W.3d 150, 157 (Mo.App.2002), which it apparently did in light of its findings. While in *Gant v. Gant*, 923 S.W.2d 527, 530 (Mo. App.1996), this court held that the trial court, where there is testimony in the record concerning domestic abuse, cannot remain silent in its findings on the issue of whether a pattern of domestic violence existed or not, *Gant* cannot be cited for the proposition that testimony of abuse is self proving and must be weighed by the trial court in its determination of physical custody, even where the court finds such testimony incredible.

■ The appellant's apparent argument in this point that any domestic abuse found by the trial court presumptively should have outweighed the court's other relevant best interests findings is without merit. The appellant cites no authority supporting such an argument,[6] and, in fact, the law is to the contrary. There is no presumption that custody of a child should be awarded to the non-abusive parent when there is evidence of abuse. *Gant*, 923 S.W.2d at 530. Rather, the trial court is to

consider evidence of domestic violence "in light of all other relevant factors, giving substantial weight to domestic violence and any other factor affecting the welfare of the children." *Id.* Thus, the trial court's finding of three incidents of abuse did not create a presumption of an award of sole physical custody to the appellant, but was simply a factor to be weighed by the trial court with all the other relevant factors found by the court in making its award of physical custody.

The appellant does not challenge the trial court's findings as to the other relevant factors it considered in making its award of physical custody, which consisted of the remaining § 452.375.2 best interests findings. Rather, she simply claims that the trial court's finding of domestic abuse, when weighed against its other best interests findings, should have carried the day for her having been awarded more significant periods of custody. We disagree.

In addition to its best interests finding as to the abuse factor of § 452.375.2, the trial court made a specific finding as to factor (2). In that regard, the court found that: "[t]he appellant has not been able to properly perform her functions as a parent to the children." This finding, which strongly favored the respondent, was supported by extensive evidence of the appellant's lack of parenting skills. In that respect, there was evidence at trial that the appellant was unable to get the children to school on time, or at all, which negatively impacted their grades. There was also evidence that the appellant traveled around the country to attend Backstreet Boys concerts, including one occasion when she went to a concert even

---

**5.** Given the fact that § 452.400, governing visitation, provides that visitation is only awarded in cases where a parent is denied custody, the joint physical custody award by the trial court here would preclude visitation rights. Rather, the rights would be joint physical custody rights.

**6.** In fact, the only authority cited in Point I is § 452.375.

though the gas to her house had been turned off for failure to pay the bill. In addition, it is clear from the record that the trial court was greatly disturbed by evidence of the appellant's frequent online chats with teenagers, which ultimately led her to travel to Chicago and St. Louis to meet several of the teenagers with whom she had visited. And, there was also evidence that the appellant allowed the parties' daughter to carry on a relationship with a seventeen-year-old boy from Chicago, whom her daughter had met over the Internet, including allowing him to visit the daughter at her home on one occasion. In contrast to the mother's obvious poor parenting skills that jeopardized their proper development, the trial court found that the father "provides a structured and stable environment for the children." In that regard, the evidence demonstrated that the respondent maintained frequent contact with the children's school as to their progress and often spent afternoons working with the children on their homework in an effort to improve their grades. In addition, there was evidence that he spoke to the appellant about his concerns over the children's excessive school absences and tardies and that he set up a conference with the principal of the children's school to discuss their grades.

Except for its findings as to factors (2) and (6), the former favoring the respondent and the latter favoring the appellant, the court's only other finding that would appear to favor either party would be the court's finding as to factor (4). As to factor (4), the court found that "[the appellant's parenting] plan provided for only two weeks in the summer while [the respondent's] plan provides for six weeks," indicating that the trial court found that the respondent of the two parents was more likely to allow the children more frequent, continuing and meaningful contact with the other parent.

In order to overturn a trial court's custody award as being against the weight of the evidence, we must hold a firm belief that the trial court's award of custody was incorrect. *Parker v. Parker*, 66 S.W.3d 778, 786 (Mo.App.2002). In child custody proceedings, we give greater deference to the trial court's determination than in any other type of case. *Smith v. Smith*, 75 S.W.3d 815, 820 (Mo.App.2002). Here, when the domestic abuse found by the trial court is weighed against the court's findings as to the appellant's obvious deficiencies in parenting skills and the respondent's greater interest in allowing the children frequent contact with the appellant, we cannot say that the court's award of joint physical custody was incorrect requiring our intervention.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in awarding physical custody of the parties' minor children because in doing so, it was required, but failed, to make the findings mandated by § 452.375.2(6) and § 452.375.13 in that the court found three separate incidents of domestic abuse by the respondent against the appellant. We agree.

Section 452.375.2(6) reads:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

. . .

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest

of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

Section 452.375.13 reads:

13. If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, from any further harm.

Although at first blush § 452.375.2(6) and § 452.375.13 appear to be quite similar, there are significant differences. While § 452.375.2(6) requires findings of fact *and* conclusions of law, § 452.375.13 requires only findings of fact. To trigger the mandated findings of fact and conclusions of law of § 452.375.2(6), the trial court has to find that: (1) "a pattern of domestic violence has occurred"; and (2) "awarding custody to the abusive parent is in the best interest of the child." *Dickerson v. Dickerson*, 55 S.W.3d 867, 872 (Mo.App.2001). However, to trigger the mandated findings of § 452.375.13, a pattern of domestic violence or abuse does not have to be found and there does not have to be an award of custody to the abusive parent. Rather, to trigger the § 452.375.13 findings, there only needs to be a finding by the trial court that domestic violence or abuse has occurred, which logically would include a single isolated incident of domestic violence or abuse. *Dickerson*, 55 S.W.3d at 872. And, while the mandated findings

and conclusions of law of § 452.375.2(6) must show that: (1) it is in the child's best interests to award the abusive parent custody; and (2) the trial court's custody and visitation orders protect the child and the parent or other family or household member who is the victim of domestic violence from any further harm, the findings of § 452.375.13 need only address the latter issue. Thus, in some respects § 452.375.2(6) requires more than § 452.375.13 and *vice versa*, and in some respects they overlap. Given their close interplay, it seems that it would have been logical to combine their provisions in one subsection or subdivision in § 452.375. In any event, having determined the requirements of § 452.375.2(6) and § 452.375.13, we now turn to the issue of whether the trial court satisfied the same.

As noted, *supra*, the trial court specifically found that there was not a pattern of domestic violence, a finding which is not challenged by the appellant on appeal. As such, the trial court was not mandated to make the findings of § 452.375.2(6). However, inasmuch as the trial court did find that there were approximately three instances of domestic abuse by the respondent against the appellant, it was required to make the findings mandated by § 452.375.13, that the trial court's custody and visitation orders protected the child and the parent or other family or household member who is the victim of domestic violence from any further harm.

With respect to the findings required by § 452.375.13, the trial court found that there had been three incidents of abuse by the respondent against the appellant, the last occurring in September of 1999, and that "[s]ince then, the parties have dealt with each other in a reasonable fashion, and the Court's parenting plan orders custody and visitation rights in a manner that protects the [appellant] from any further

harm." The appellant contends that this finding is deficient in that while it sets forth, as required, that the trial court's "parenting plan orders custody and visitation rights in a manner that protects [her]," it fails, as required, to set forth that its parenting plan also protects the children. We agree. While the trial court may very well have considered the protection of the children when determining the custody arrangement, its orders do not indicate that fact. Provisions such as § 452.375.13 were inserted to insure that in every case a court considers the child's protection in awarding custody and visitation because of the justified concern by the legislature of the potential danger domestic violence poses for children. *Dickerson,* 55 S.W.3d at 872. Strict compliance with § 452.375.13 is, therefore, warranted. Hence, because the trial court failed to make the requisite specific findings with respect to whether the parenting plan adopted protected the children, in addition to the appellant, we are compelled to reverse and remand for the trial court to have the opportunity to consider that issue given the prior acts of domestic violence and abuse by the respondent against the appellant.

### III.

■ In Point III, the appellant claims that "[t]he trial court erred in entering its judgment and decree of dissolution of marriage because the trial court's judgment and decree is against the case law in that the trial court's findings of fact on the record as to custody and maintenance award is antagonistic, inconsistent or contradictory." Before addressing the merits of this claim, we first must address the respondent's contention that the appel-

lant's point relied on preserves nothing for our review because it fails to substantially comply with Rule 84.04(d).[7]

■ Rule 84.04(d), which sets forth the requirements for valid points relied on, provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error], in that [explain why the legal reasons, in the context of the case, support the claim of reversible error]."

This " 'rule requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.' " *Wilson v. Carnahan,* 25 S.W.3d 664, 666 (Mo.App.2000) (*quoting Hall v. Mo. Bd. of Prob. & Parole,* 10 S.W.3d 540, 543 (Mo. App.1999)). " 'The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review.' " *Id.* (*quoting*

---

7. All rule references are to the Missouri Rules of Civil Procedure (2002), unless otherwise indicated.

*Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo. *banc* 1997)). "Rule 84.04(d) 'sets forth a form for a point relied on that satisfies the [rule's] requirements.' " *Id.* (*quoting In re Marriage of Wright,* 990 S.W.2d 703, 708 (Mo.App.1999)).

We will review a point relied on that does not technically comply with Rule 84.04(d) as long as we are able to ascertain the issues being raised to some degree of certainty by reading the point relied on in conjunction with the argument thereon and provided that in doing so we are not forced to become an advocate for the appellant. *Stangeland,* 33 S.W.3d at 703. However, in this point, even when the point relied on is read in conjunction with the argument, we are left in total wonderment as to the legal reason or reasons why a ruling of the trial court is reversible error, and why in the context of this case those legal reasons support a claim of reversible error. As such, we would be left to total speculation in attempting to conduct any appellate review in this point, which we cannot do. *Stickley v. Auto Credit, Inc.,* 53 S.W.3d 560, 562 (Mo.App. 2001).

The appellant's claim of error in this point is dismissed for the appellant's failure to comply with Rule 84.04(d)(1).

## Conclusion

The judgment of the circuit court awarding joint physical custody of the children to the parties is reversed and the case is remanded to the trial court for the sole purpose of making such findings as required by § 452.375.13.

NEWTON, P.J., and ULRICH, J., concur.