Michael COOLEY, Respondent,

v.

Brenda COOLEY, Appellant.

No. WD 62905.

Missouri Court of Appeals, Western District.

April 27, 2004.

---

Michael W. Walker, Kansas City, for Appellant.

Scott L. Campbell, Platte City, for Respondent.

Before HOWARD, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

The parties to the dissolution, Michael Cooley (Father) and Brenda Cooley (Mother) were married in 1994, while Mother was on active duty with the Air Force. In 1996, the parties' only child, Marilyn, was born. During this time, the family lived in Abilene, Texas.

In April 1997, when the child was approximately seven months old, Mother volunteered for a six-week tour of duty in England, leaving Father to care for the child. After the tour of duty ended, Mother returned home. Then, shortly after the child's first birthday, Mother left for a five-month involuntary tour of duty in Saudi Arabia. While in Saudi Arabia, Mother decided to re-enlist. When he found out that Mother had decided to re-enlist, Father became upset, prompting Mother to withdraw her re-enlistment. After serving in Saudi Arabia, Mother returned to the United States and rejoined her family in Kansas City, Missouri, where the family lived with Mother's parents.

In late 1999, after living with Mother's parents for approximately one-and-one-half years, the family moved into its own

home. The family lived together there until June 2000, when the parties separated and Mother moved out of the home. Father filed a petition for dissolution of marriage in July 2000.

Following trial, primary child custody was granted to Father. Mother appealed, and this court remanded the case, because the trial court failed to make any findings regarding domestic abuse. *Cooley v. Cooley,* 99 S.W.3d 518, 519–20 (Mo.App.2003). After remand, the trial court entered a second amended judgment, from which Mother appeals.

## STANDARD OF REVIEW

Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court incorrectly declares or applies the law. *Stangeland v. Stangeland,* 33 S.W.3d 696, 700 (Mo.App.2000). In a case involving child custody, more so than in any other type of case, great deference is given to the trial court's judgment. *Parker v. Parker,* 66 S.W.3d 778, 786 (Mo.App.2002). It is presumed that the trial court awarded custody based on the best interest of the child. *Seaman v. Seaman,* 41 S.W.3d 889, 892 (Mo.App.2001). Therefore, an award of child custody will not be disturbed unless the appellate court is firmly convinced that the welfare of the child requires some other disposition. *Miers v. Miers,* 53 S.W.3d 592, 595 (Mo.App.2001).

## ANALYSIS

■ Mother claims that the trial court erred in awarding primary custody of the child to Father, because the court's finding that it was in the child's best interest was against the weight of the evidence. Specifically, Mother points to Father's conduct: (1) Father's past use of marijuana; (2) Father's use of chewing tobacco; (3) Father's viewing of pornography; and (4) Father's physical abuse of Mother.

While Father used marijuana before and during the marriage, Father also testified that he had not used marijuana since the summer before the trial. Mother cites *In re Marriage of Ryterski,* 655 S.W.2d 102 (Mo.App.1983), for the proposition that evidence of marijuana use by one parent establishes that the grant of child custody to the other (non-using) parent would be in the best interest of the child. However, Mother misunderstands *Ryterski,* which held that evidence of marijuana use was substantial evidence for the trial court to award custody to the non-using parent. *Id.* at 105. This is distinguishable from Mother's contention here that evidence of marijuana use by one parent automatically requires the trial court to award custody to the other parent. Instead, it is a factor that can be considered by the trial court and weighed against other factors to determine the custodial arrangement that would be in the best interest of the child.

■ Mother also points to domestic abuse committed by Father against her as proof that it would not be in the child's best interest for primary custody to be awarded to Father. The trial court made a finding that Father hit Mother once and that no instances of abuse occurred before or after this incident. Although domestic violence is an important factor to consider, there is no presumption that child custody should be awarded to the non-abusive parent. *Gant v. Gant,* 923 S.W.2d 527, 530 (Mo.App.1996). Again, the evidence of domestic abuse is "simply a factor to be weighed by the trial court with all the other relevant factors found by the court in making its award of physical custody." *Loumiet v. Loumiet,* 103 S.W.3d 332, 341 (Mo.App.2003).

Likewise, Father's use of chewing tobacco and viewing of pornography can be

considered by the trial court when it makes its finding but is not determinative. Furthermore, Mother simply makes these two assertions without stating how Father's conduct here is harmful to the child or how it affects the child's best interest. There is no evidence that the child has been exposed to or has access to Father's pornography, or that father reviewing pornography affected father's conduct, his relationship with his daughter, his daughter's environment, or otherwise jeopardized his daughter; nor was evidence presented that the child ever used Father's tobacco or been exposed to the residue left after Father has chewed the tobacco.

On the other hand, there is sufficient evidence to support the trial court's determination. In examining the factors enumerated by Section 452.375.2,[1] the trial court made specific findings that factors (2), (3), and (5) were in Father's favor. Regarding factor (2), the trial court stated:

The father has addressed the needs of the child for frequent contact with the mother and mother's family. The mother did not have a separate bedroom for the child. The father has the ability to perform as father for the needs of the child. The mother, on the other hand, has left the minor with the father for periods of time when she volunteered for overseas military service.

Several witnesses testified that Father was a good parent. One witness described Father as "Mr. Mom." When asked what she meant, the witness indicated that "—he cares—he cares for [the child], he bathes her, he feeds her, you know, he's her livelihood. I mean he does everything for her." The witness also testified that Father performed most of the household duties, including cleaning and cooking.

Mother even conceded at trial that Father was a good parent. Mother, on the other hand, has not maintained a stable residence and has moved several times since the divorce petition was filed.[2] Also weighing against Mother is the fact that she did not have a bedroom prepared for the child had she been granted custody.

---

1. All statutory references are to RSMo. (2000) unless indicated otherwise.

In determining custody, the trial court must consider the following factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful *relationship* with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. RSMo. 452.375.2.

2. Since the filing, Mother has lived with Michael Castle (a man with whom she had a relationship) on two separate occasions, with her parents on two separate occasions, in her own apartment, and at the marital home during a period when she was attempting to reconcile with Father.

Because there is sufficient evidence to support the trial court's determination,[3] this court cannot conclude that the evidence requires a different custodial arrangement.

Mother also claims that the trial court erred because it failed to comply with the statutory requirements of Section 452.375.6:

> If the parties have not agreed to a custodial arrangement ... the court shall include a written finding in the judgment or order based on ... the factors listed in subdivisions (1) to (8) of subsection 2 of [Section 452.375] detailing the specific relevant factors that made a particular arrangement in the best interest of the child.

Here, the parties did not agree to a custodial arrangement, so the trial court was required to make written findings in the judgment detailing the specific factors that made its custody award in the best interest of the child.

Mother takes issue with the trial court's determination regarding factor (3), which was, "The Court finds this factor in favor of the father." She argues that "[t]he bare finding of the court ... fails to satisfy the statutory requirement for 'detailing specific relevant factors.' " Mother misreads the statute. The "specific relevant factors" mentioned in the statute refer to the factors listed in Section 452.375.2(1)-(8). Therefore, the trial court was required to examine those eight factors and detail the specific factors it found to be most relevant, which it did—the trial court found factors (2), (3), and (5) to be in favor of Father.

To dispel any doubts that there was sufficient evidence to support the trial court finding regarding factor. (3),[4] this court will note that the evidence indicated that Father was responsible for a significant amount of the actual care of the child. Also, the child had formed friendships with children in the neighborhood where she had been living with Father. Finally, the trial court made a specific finding that Father "addressed the needs of the child for frequent contact with mother and mother's family." As such, the child would still have a significant relationship with Mother, despite Father having primary custody.

■ Mother also claims that the trial court erred in finding that Section 452.375.2(2)[5] favored Father. Specifically, Mother complains that the trial court should not have considered her military service—Mother volunteered for overseas duty when the child was approximately seven months old—in finding that this factor favored Father.

■ Mother does not cite any authority why the trial court should not have considered the fact that Mother volunteered for military duty when the child was still an infant; she merely makes the following policy argument:

> To hold that a mother in the military who volunteers for a[six] week overseas tour of duty when her child is [seven] months old creates a bias against her obtaining custody of that child in a dis-

---

**3.** This court will examine factors (3) and (5) later in this opinion, as they are raised in Mother's other points.

**4.** This factor examines "[t]he interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interest."

**5.** In making a child custody award, Section 452.375.2(2) requires the trial court to consider "[t]he needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child."

solution, is to hold that if a woman wants to serve her country in the military she is precluded from having children.

However, there is an even greater policy to be served—the child's best interest. In child custody disputes, the child's welfare is the paramount concern. *Ficker v. Ficker,* 62 S.W.3d 496, 499 (Mo.App.2001). The fact that Mother did volunteer for duty is relevant to her ability and willingness to perform her role as a mother and could properly be considered by the trial court. Lastly, by holding that the trial court could consider Mother's voluntary service, this court does not see how its decision precludes women in the military from having children, as Mother claims.

Mother also claims that the trial court erred in finding that Section 452.375.2(5) [6] favored father. Mother contends that the trial court made a presumption in favor of Father, because he had custody of the child prior to trial. No presumption of a continued right of custody exists merely because one parent had custody prior to trial. *Edmison ex rel. Edmison v. Clarke,* 988 S.W.2d 604, 609 (Mo.App.1999). Otherwise, such a presumption would change an award of custody into a modification of a child custody order. *Horton v. Horton,* 961 S.W.2d 67, 71 (Mo.App.1997). However, the trial court made no presumption in favor of father, nor did it require mother to show that a change of custody would be in the child's best interest. The trial court merely made the following finding regarding factor (5): "The Court finds this factor in favor of the father. The father has provided a stable living environment for the child." There was sufficient evidence to support this finding. The child had been living in the same home for nearly two years at the time of trial, had made close friends with children in the neighborhood, and had already begun attending daycare. The fact that the trial court addressed the other statutory factors further undermines Mother's position that the court had made a presumption in father's favor merely because he currently had custody. If it had made such a presumption, the trial court would not have needed to make any such findings regarding the other factors, as the burden would have been on Mother to rebut the presumption. Point denied.

The judgment is affirmed.

All concur.

---

6. Section 452.375.2(5) requires the trial court to consider "[t]he child's adjustment to the child's home, school, and community."