In the Interest of D.L.R. and K.N.R.

**George Rader, Jr., Petitioner–Respondent,**

v.

**Brianna R. Anderson, Respondent–Appellant.**

No. 27259.

Missouri Court of Appeals, Southern District, Division Two.

July 28, 2006.

---

James R. Sharp, Sharp & Bredesen, Springfield, for Appellant.

No Appearance for Respondent.

PHILLIP R. GARRISON, Judge.

This appeal arose from an action brought by George Rader, Jr. ("Father") for paternity and custody of two minor children, D.L.R. and K.N.R., born during the time he and Brianna R. Anderson ("Mother") lived together.[1] Mother ap-

---

1. During the proceedings a paternity test showed that Father was not the biological

peals the trial court's judgment regarding custody.

Mother and Father met in 1999, and shortly thereafter, Mother and her daughter from a previous relationship moved in with Father and his two minor children. When the parties separated in 2004, Father filed the action which is the subject of this appeal. Mother filed her amended answer, which conceded that Father was the natural father of K.N.R. A hearing was held on Father's petition and the trial court entered its judgment and decree of paternity and custody finding that K.N.R. was the biological child of both Father and Mother, and awarding the parties joint legal and physical custody, as well as providing that K.N.R.'s primary residence be with Father with specific periods of visitation to Mother as outlined in the parenting plan.

Mother, filed a motion for new trial and/or motion to set aside the judgment, or in the alternative to enter an amended judgment arguing, *inter alia,* that the trial court failed to set forth the factors which made its custody arrangement in the best interests of the child as required by Section 452.375.6,[2] and that "special findings"

must be made if the trial court finds domestic abuse. After a hearing, the trial court entered its amended judgment and decree of paternity and custody to address Section 452.375, while retaining the same custody provisions. Mother now appeals.

In Mother's lone point she alleges, in four sub-points, that the trial court's judgment "awarding [Father] primary residential custody"[3] was not supported by substantial evidence and was against the weight of the evidence. In sub-point (a), she argues that because there was evidence of domestic violence by Father, the trial court was required to enter specific written findings as to why it was in the child's best interest for her primary residence to be with Father. In sub-point (b), she contends that Father was unable to appropriately parent the child in that the child was often returned to Mother in an unclean condition. In sub-point (c), she argues that, contrary to the trial court's finding, there was no evidence that the child would undergo an extreme adjustment in moving from Father's to Mother's home. In sub-point (d), she contends that the trial court erroneously found that the other factors in 452.375.2[4] were a "wash,"

father of D.L.R. and as a result he withdrew his claim for custody regarding D.L.R.

2. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Rules of Civil Procedure (2005), unless otherwise indicated.

3. This phrase was not used by the trial court in its judgment and Mother offers no explanation for what it means. Therefore, we assume she is referring to the trial court's determination that K.N.R.'s primary residence should be with Father.

4. Section 452.375.2 states:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any his-

because the evidence illustrated that Father was unable to effectively parent the child and was unwilling to allow the child frequent, continuing and meaningful contact with Mother.

We will affirm the trial court's judgment in child custody cases unless it is unsupported by the evidence, is against the weight of the evidence or erroneously declares or applies the law. *Sewell–Davis v. Franklin*, 174 S.W.3d 58, 59 (Mo.App. W.D.2005). In custody cases the trial court is granted a great deal of discretion and we will only reverse if we are firmly convinced that the welfare of the child requires a different disposition. *Id.* "In a court-tried case, the trial court is the arbiter of the facts; it is free to accept or reject all, part, or none of the testimony of a witness." *Cunningham v. Cunningham*, 143 S.W.3d 647, 653 (Mo.App. E.D.2004). The trial court is also free to disbelieve any testimony, even that which is not contradicted. *Id.*

With regard to sub-point (a), the trial court's amended judgment stated, in pertinent part:

> [Mother] contends that her testimony regarding an Order of Protection awarded to her against [Father] is grounds for reconsideration or new trial on the issue of custody. Initially, the Court notes that [Mother] did not provide the Court with copies of the file with which to take judicial notice of such a case. Second, [Section] 452.375 discusses history or patterns of domestic violence. Even

> tory of abuse of any individuals involved. . . .
>
> (7) The intention of either parent to relocate the principal residence of the child; and
>
> (8) The wishes of a child as to child's custodian.

5. We note that Section 452.375.13 also requires specific findings of fact concerning do-

> granting [Mother's] testimony its widest inferences, which the Court does not, there was absolutely no evidence, save [Mother's] mention of the Order of Protection matter, that any domestic violence ever occurred, and no evidence that any such violence was directed toward [K.N.R.]. The Court finds that [Mother's] allegations of domestic violence or abuse are unsupported by the evidence.

Mother argues, citing Section 452.375.2(6), that this finding was erroneous because there was evidence of domestic violence and, therefore, the trial court should have found that domestic violence had occurred and entered written findings as to why it found that it was in the child's best interest for her primary residence to be with Father.[5] Section 452.375.2 states in pertinent part:

> The Court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
>
> . . . .
>
> (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law.

Mother essentially claims that the trial court ignored or overlooked the evidence

mestic violence. However, Mother does not cite this section in her point on appeal and does not contend that this section is applicable. Accordingly, we need not consider this section's applicability to the instant case. *See Couch v. Couch*, 978 S.W.2d 505, 510 (Mo. App. W.D.1998).

of domestic violence that was presented in finding that there was no pattern of domestic violence. In her testimony, Mother claimed that Father had choked her once and had slapped her "a few times." Lorraine Kusior, D.L.R.'s counselor, testified, without objection, that D.L.R. had indicated to her that he witnessed Father strike Mother during an exchange of the children. Mother testified that on one occasion when the parties were exchanging the children, Father "grabbed me by the arm and slung me to the back of the car." She also testified that following this alleged incident she "got an ex parte," mandating that future exchanges take place at the Mountain Grove Police Department. Our reading of the entire record reveals that this "ex parte" was the "Order of Protection" that the trial court referred to in its amended judgment.

■ When faced with evidence of abuse, the trial court is obligated to make a finding as to whether there exists a pattern of domestic violence. *See Loumiet v. Loumiet*, 103 S.W.3d 332, 341 (Mo.App. W.D. 2003); *Gant v. Gant*, 923 S.W.2d 527, 530 (Mo.App. W.D.1996). More specifically, the written requirements of Section 452.375.2(6), are only triggered after the trial court has found that (1) a pattern of domestic violence has occurred and (2) that granting the abusive parent custody is in the best interest of the child. *Loumiet*, 103 S.W.3d at 343.

The trial court's amended judgment indicates that it considered the testimony summarized above, and rejected it. The trial court stated that there was "absolutely no evidence, save Mother's mention of the Order of Protection matter," of domestic violence. As we understand Mother's argument, the alleged incident in which Father grabbed Mother and slung her into the car was the impetus for her getting the "Order of Protection." Therefore, we con-

clude that the trial court did consider the evidence presented by Mother and simply disbelieved it, as was its prerogative. *See Cunningham*, 143 S.W.3d at 653. Testimony of abuse is not self-proving and therefore, the court is free to disregard it. *Loumiet*, 103 S.W.3d at 341.

The trial court also stated: "[Mother's] allegations of domestic violence or abuse are unsupported by the evidence." We construe this statement, in the context of the whole record, to mean that the trial court followed the mandate of Section 452.375.2(6), and simply found that there was no pattern or history of domestic violence. Therefore, the written findings of fact and conclusions of law required by Section 452.375.2(6) were not triggered. *See Id.* at 343. Accordingly, this portion of Mother's point is denied.

■ Sub-point (b) of Mother's point relied on was addressed in the argument section supporting sub-point (d) and therefore both will be addressed together. In sub-point (c), Mother argues that there was no evidence that K.N.R. would undergo an "extreme adjustment" in moving from Father's home and away from Father's extended family. This argument, as we understand it, challenges the sufficiency of the evidence regarding the trial court's determination that Section 452.375.2(5) weighed in favor of K.N.R.'s primary residence being with Father. Section 452.375.2(5) states specifically:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors, including:

. . . .

(5) The child's adjustment to the child's home, school, and community.

In this regard the trial court specifically found:

Weighing the evidence, the Court finds that [K.N.R.'s] primary residence should be with [Father]. The choice, residence with Father who owns the home [K.N.R.] has always lived in, or with Mother who is presently living with a boyfriend in a rented residence, is clear. Moreover, the prospective stability for [K.N.R.] of residing with [Father] is greater, as [Mother's] living arrangements are, clearly, very subject to change. Therefore, while meaning neither scorn nor disrespect to [Mother], the Court finds that placing [K.N.R.'s] primary residence with [Father] in such a situation would be in the best interest of [K.N.R.].

[Section] 452.375.2(3) considers the interaction between [K.N.R.] and other persons that may affect [K.N.R.'s] best interests. The Court finds from the evidence that [K.N.R.], while living with [Father], is surrounded by [Father] as well as [Father's] extended family members, most of whom live near [Father] and whom she has grown up with. Conversely, [Mother], as discussed above, is now living in a different setting with new persons. The Court finds that consideration of this statutory factor favors [Father].

This same argument applies to the factor enunciated in [Section] 452.375.2(5). While [K.N.R.] is too young for school to be a factor, the Court finds that [K.N.R.] would undergo an extreme adjustment in moving from the home in which her young life began to a new, maybe-not-permanent abode with [Mother] and Mother's new boyfriend. Moreover, as discussed above, as [Mother] is not presently in a more-permanent type residence or living arrangement, it is conceivable that [K.N.R.] could have to adjust multiple times to [Mother's] residential changes.

■ It is for the trial court to determine whether a particular custody arrangement is in the best interests of the child. *Couch,* 978 S.W.2d at 510. Our review is limited to determining whether the record contains sufficient evidence to support the trial court's determination. *Id.* Mother contends that Section 452.375.2(5) should not be a determining factor because K.N.R. is only ten months old and, therefore, she would have no difficulty adjusting to living with Mother. However, other than the statute, Mother cites to no authority, nor explains its absence, to support this argument.

In this case Father testified, and Mother concedes, that he owned his home, that he had multiple family members in the area, and that K.N.R. has a close relationship with Father's other children. Furthermore, Mother concedes that she does not own her home and that she lives with her boyfriend. The trial court's judgment clearly illustrates that it weighed all of this evidence and concluded that K.N.R.'s best interests are better served if her primary residence is with Father. It is not for us to re-weigh the evidence, but only to determine whether the evidence supports the trial court's assessment. *See Couch,* 978 S.W.2d at 510. Accordingly, this portion of Mother's point is denied.

In sub-point (d), Mother argues that the trial court erred in finding that all other factors concerning custody in Section 452.375.2 were a "wash." Specifically, the trial court found:

> [T]hat consideration of the remaining factors of [Section] 452.375.2 is a "wash", in that the evidence produced at trial does not lead the Court to decision for either [Father] or [Mother] on the issue of custody.

Mother argues that it was against the weight of the evidence for the trial court to disregard what she alleges was substantial

evidence of Father's inability to effectively parent the child and his unwillingness to allow the child frequent, continuing and meaningful contact with Mother under Sections 452.375.2(2) and (4). Again, however, outside of the statute, Mother cites to no authority, nor explains its absence to support these arguments.

The record reveals conflicting evidence on these issues. Mother contends that Father does not have the ability to actively perform the functions of a parent, as described in Section 452.375.2(2). In this regard she argues that he does not provide for the physical needs of K.N.R. and that he consistently returned K.N.R. "stinking, hungry and filthy." Father testified that he took good care of K.N.R., as well as his other children's physical needs, and denied Mother's allegation that K.N.R. was always returned to her unclean and hungry. Furthermore, there was ample evidence in the record that Father has been adequately caring for his other two minor children.

Mother also alleges that Father is unlikely to allow K.N.R. frequent, continuing and meaningful contact with her as described in Section 452.375.2(4). Specifically, she argues that Father failed to return K.N.R. on time, failed to communicate with Mother regarding K.N.R., failed to return medicines given to him by Mother for K.N.R., and that he displayed hostility toward Mother during exchanges of K.N.R. Father implied in his testimony that any failures in communication between him and Mother were mutual. He also expressly stated that he believed that parents should communicate with each other about the well-being of their children. Father denied or explained any failure to return medicines or to return K.N.R. to Mother on time. In addition, there was evidence that on multiple occasions Mother did not show up at the appointed time and place with K.N.R. so that Father could have visitation.

This record reveals a contentious and acrimonious relationship between Mother and Father and there is ample evidence that the remaining factors in Section 452.375.2 do not weigh in favor of any particular custody arrangement. As stated above, we will not re-weigh the evidence. *Couch*, 978 S.W.2d at 510. In light of the conflicting nature of the evidence, we find that there was sufficient evidence to support the trial court's findings under Section 452.375.2. Accordingly, Mother's sub-points (b) and (d) are denied.

The judgment of the trial court is affirmed.

BATES, C.J., and SHRUM, P.J., concur.