Brent **DICKERSON**, Respondent,

v.

Tamera L. **DICKERSON**, Appellant.

No. WD 58128.

Missouri Court of Appeals,
Western District.

Sept. 25, 2001.

Gabriel Domjan, Independence, for Appellant.

Linda Sherman, Harrisonville, for Respondent.

Before LOWENSTEIN, P.J., ULRICH and LISA WHITE HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Tamera Dickerson appeals from a judgment and decree of dissolution awarding Brent Dickerson sole legal and physical custody of the two children born of their marriage. We reverse and remand for a new trial on the issue of custody due to the trial court's failure to make required factual findings regarding domestic violence, and because of the trial court's prejudicial error in allowing the Guardian Ad Litem to give unsworn hearsay testimony.

## Factual and Procedural Background [1]

Brent Dickerson (Husband) and Tamera Dickerson (Wife) were married on July 24,

---

1. In dissolution cases, appellate courts generally view the evidence in a light most favorable to the judgment. We depart from that procedure here, where the dispositive issue

1987. At the time of marriage, Husband and Wife each had one child from a previous relationship. Wife's daughter, Alexis, born December 31, 1984, lived with the parties from the time of marriage. Husband's son, Joshua, was seven years old when he came to live with the parties in 1990. There were two children born of the parties' marriage: Lukas, born January 7, 1989, and Lacey, born October 17, 1991.

The marriage initially was stressed due to debts arising from Husband's prior marriage that caused him to file bankruptcy. The parties incurred additional debt from 1990 to 1995 to obtain anger control counseling for Joshua. Husband and Wife frequently argued about financial problems and could not agree on methods to discipline and raise the children.

The parties separated in November 1997, following an argument where Husband told Wife "he was going to finish this and take care of it." Believing herself and the children to be in danger, Wife went to a shelter and obtained an ex parte order of protection against Husband. Husband consented to the entry of a full order of protection in December 1997. The order prohibited Husband from entering the marital home and gave Wife custody of Lukas and Lacey. Husband later consented to an order allowing him supervised visits with the children.

On December 19, 1997, Husband filed for divorce in the Circuit Court of Cass County. Wife's responsive pleadings alleged that Husband had physically and sexually abused the children. The trial court appointed a guardian ad litem for the children on March 4, 1998. Although Husband originally sought joint custody of the children, he filed an Amended Petition pri-

or to trial to seek sole custody. Wife also sought sole custody of the children.

The parties' trial began March 18, 1999, and continued over twelve separate days, ending on September 16, 1999. Throughout the trial, Wife presented evidence that Husband was physically abusive to her and other family members during the marriage. Wife testified that, a few weeks after their honeymoon in 1987, Husband shoved Wife's mother during an argument over whether he was supposed to pick up Alexis at her home. In 1989 or 1990, Wife threatened to leave Husband because she believed he was too "aggressive" and "excessive" in spanking Alexis. Husband, who is six feet five inches tall, pushed Wife away from the door and prevented her from leaving the home. Wife testified that in approximately 1991 or 1992, Husband picked her up and threw her down the front steps after they argued and she attempted to leave. On another occasion, Husband bruised Wife's arms during an argument when he shoved her onto a couch and bounced and sat on her.

Wife described an incident that occurred on a Sunday morning as Husband drove the family to church. The children began scuffling in the back seat and Husband reached back to slap Lukas in the face, causing his lip to bleed. Husband and Wife argued over the incident and then Wife got out of the car. Husband yelled at her to tell the kids goodbye because she was never going to see them again. He nearly hit Wife with the car as he drove away.

On another Sunday in 1995 or 1996, Husband was upset that the family was running late for church. While driving the car, he blamed Wife for not being ready on time and reached across her to open the

on appeal is not whether the evidence was factually sufficient to support the judgment, but whether the trial court erred as a matter

of law in failing to make findings of domestic violence based on the evidence presented.

passenger door. He tried to push Wife out of the moving car, as the children screamed and struggled to close the open door.

During his testimony, Husband admitted frequently arguing with his Wife but denied that his behavior constituted physical abuse. He acknowledged that he once sat on Wife for about thirty seconds to prevent her from hitting him during an argument. He admitted pushing Wife out of the front door once when she threatened to leave and take the kids. He recalled becoming so angry after an argument with Wife that he hit a bedroom wall with his fist three times, leaving a hole approximately one foot wide. During another confrontation, Wife picked up the telephone and tried to call the police. Husband admits he grabbed the phone from her hand and broke the phone by throwing it on the floor. Wife's hand was cut during the incident. Husband pled guilty and received a suspended imposition of sentence on a charge related to the incident.

Wife testified that Husband was physically abusive to the children. She said Husband shook and grabbed Alexis, leaving bruises on the child's arm. Husband shook Alexis with both of his hands even though one of her arms was in a cast. On another occasion, Husband grabbed and squeezed Alexis' wrists, leaving red and purple marks and blisters. Husband hit Alexis and Lukas in the head while wearing a class ring and left marks on them. He bruised their buttocks with excessive spankings.

Wife alleged that Husband sexually abused Lukas while ostensibly examining the child for signs of precocious puberty.[2] Lukas had told his parents he was growing pubic hair. Both parents went into the bathroom with him to check the growth, but Wife promptly left because Lukas was embarrassed. Lukas later reported to two counselors and a psychologist that Husband rubbed and squeezed Lukas' penis to the point of erection while they were in the bathroom together. Lukas said his father repeated this incident a few hours later when Wife left home.

Several witnesses testified that Husband walked around the house in his underwear in front of the children. According to Wife, sometimes Husband touched himself to the point of an erection when he walked around the house in his underwear, and she would throw a towel over his waist. T.J., a neighborhood teenager, testified that he witnessed Husband walking around the home in his underwear. T.J. saw Husband's hands move and then Husband would get an erection. T.J. also saw Husband standing at the screen door manipulating his genitals.

Husband admitted that, in the summer months, he would "strip down to [his] underwear" and watch TV in the living room during the early evening, two or three days a week. He remembered that Wife called him "disgusting" and threw a cover over him when he "scratched [himself] or did something she didn't like," while sitting in the living room chair in his underwear.

Dan Whitsitt, a licensed counselor who treated Alexis, Lacey and Lukas, testified that the children exhibited signs of abuse. He recommended the court grant Wife custody of Lukas and Lacey, and allow Husband only supervised visits with the children until Lukas' fear of him subsided.

2. "Precocious Puberty" is a pediatric medical condition characterized by the onset of puberty in boys prior to the age of nine. Dorland's Illustrated Medical Dictionary 1385 (28th ed.1994).

The Guardian Ad Litem, Wife and Husband separately presented testimony from three licensed psychologists who assessed the custodial fitness of the parties. Each of the psychologists recommended to the court a joint custody arrangement whereby Wife would have primary residential custody of Lukas and Lacey, and Husband would have supervised visitation, eventually graduating to unsupervised visitation.

At the conclusion of twelve days of testimony from the parties and witnesses, the trial court invited the Guardian Ad Litem to make a final recommendation regarding custody. Wife's counsel objected as the Guardian Ad Litem began to give unsworn testimony of her recommendations. The court overruled the objection and further stated that the Guardian Ad Litem, as an officer of the court, would not be subject to cross-examination.

The Guardian Ad Litem recommended joint legal custody of Lukas and Lacey, and that Husband have primary residential (i.e., physical) custody of the children. The recommendation was based on the Guardian Ad Litem's belief that therapeutic counseling had improved the relationship between Husband and the children during the six-month period over which the trial extended. The Guardian Ad Litem further told the court that two of the three psychologists, who had previously testified that the children should live with Wife and have supervised visits with Husband, now agreed with her recommendation that Husband should have primary physical custody of the children.

On December 9, 1999, the trial court entered a judgment of dissolution, awarding sole legal and physical custody of Lukas and Lacey to Husband. Wife appeals.

---

**3.** All statutory citations are to the Missouri Revised Statutes (2000), unless otherwise noted.

## Points on Appeal

On appeal, Wife asserts five points of error: 1) the trial court's custody decision was against the weight of the evidence; 2) the trial court failed to make required findings of fact with regard to domestic violence; 3) the trial court abused its discretion by restricting the children's access to counselors; 4) the trial court erred in allowing the Guardian Ad Litem to give unsworn hearsay testimony; and 5) the trial court abused its discretion in denying Wife's request for attorney's fees. We reverse and remand for a new trial based on prejudicial error found in Points 2 and 4. We need not consider the remaining points as this matter will be retried.

■ Review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The court must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Huffman v. Huffman*, 11 S.W.3d 882, 885 (Mo.App. W.D.2000).

## Evidence of Domestic Violence

■ In Point 2, Appellant asserts the trial court erred in failing to make findings of fact and conclusions of law regarding domestic violence as required by Section 452.375.2(6) and Section 452.375.13 R.S.MO.[3] These statutory provisions set forth the procedures trial courts must follow in making child custody determinations. Section 452.375.2 provides:

> The court shall determine custody in accordance with the best interests of the

child. The court shall consider all relevant factors including: ...

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. *If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law.* Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm; [emphasis added]

Upon a finding that domestic violence or abuse occurred, Section 452.375.13 also requires the trial court to "make specific findings of fact to show that the custody ... arrangement by the court best protects the child" or other family members from further harm.

While similar, these statutes differ in two ways. First, while Section 452.375.2(6) requires written findings if a *pattern* of domestic violence exists, Section 452.375.13 mandates such findings if *any* domestic violence occurred, whether or not it is a pattern of conduct. *Gant v. Gant*, 892 S.W.2d 342, 345 (Mo.App. W.D.1995) (interpreting predecessor statutes.) Second, Section 452.375.2(6) requires written findings only if the court awards custody to an abusive parent. Section 452.375.13 mandates written findings regardless of which parent is awarded custody.

Section 452.375 does not define "domestic violence," but this court has previously relied upon Section 452.400 for guidance in

understanding this term. *Id.* That provision states that, in determining a parent's visitation rights, the court shall consider the following with regard to domestic violence: "the parents' history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons." Section 452.400.1 [4]

Abuse, within the meaning of Section 452.375.13, is defined as "any physical injury ... inflicted on a child other than by accidental means by an adult household member, or stalking of a child. Discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse." Section 455.501(1).

Compliance with the requirements of subsections 452.375.2(6) and 452.375.13 is mandatory. If the record reflects evidence of domestic violence, the trial court must make written findings consistent with these statutory provisions. The non-discretionary nature of these provisions reflects the legislature's concern with the problem of domestic violence, and its resolve that the trial court should consider the existence and history of such violence in making its determination of child custody and visitation. *Gant*, 892 S.W.2d at 345.

The record in this case indicates substantial evidence of domestic violence was presented at trial. Wife related numerous incidents during the twelve-year marriage where Husband shoved, threatened, pushed down, and forcibly restrained her and other family members. There was evidence that Wife was bruised and cut by Husband during at least two altercations, and her life was endangered on the two

---

**4.** The explanation in Section 452.400.1 is also consistent with the Adult Abuse Act, Section 455.200(2), which defines "domestic violence" as "attempting to cause or causing bodily injury to a family or household member, or placing a family or household member by threat of force in fear of imminent physical harm."

occasions when he nearly hit her with the car and attempted to push her out of a moving vehicle.

Testimony also was presented regarding Husband's abuse of the children. On more than one occasion, Wife witnessed Husband shaking and grabbing Alexis until her arms and wrists were blistered and bruised. Wife argued with Husband because he slapped Lukas, causing the child's lip to bleed. Wife saw Husband spank the children and hit them in the head while wearing a large ring on his finger, leaving marks on their skin and discoloration. The evidence indicated that Husband's disciplinary actions toward the children were unreasonable. The children's therapeutic counselor testified that three of the children—Lukas, Lacey and Alexis—exhibited signs of being abused.

Several witnesses testified regarding Husband's sexual abuse of Lukas and his sexually suggestive conduct. Three medical professionals reported complaints from Lukas that his father had manipulated Lukas' penis on two occasions, causing erection. Wife and a neighbor witnessed Husband walking around the house in his underwear, in front of the children, and groping his own genitals to the point of erection.

While Husband denied he was abusive, he admitted conduct that fits within the definition of domestic violence. Husband acknowledges that, during fits of anger, he pushed Wife out of the front door, he punched a hole in the wall of his home, and he shoved Wife on the couch and sat on her. He pled guilty to charges filed after he snatched a telephone out of Wife's hand to prevent her from calling the police. Husband also consented to the entry of a full order of protection that was based on Wife's allegations of past emotional and physical abuse.

It is clear that sufficient evidence of abuse was presented to trigger the requirement in Section 452.375.13 that the trial court make specific findings regarding domestic violence. Moreover, the evidence established a pattern of domestic violence, within the meaning of Section 452.375.2(6), that necessitated written findings of fact and conclusions of law to justify the trial court's award of custody to the abusive parent.

Upon review of the judgment entry, we find three paragraphs where the trial court addressed the issue of domestic violence. In paragraph 12, the court refers generally to Wife's allegations that Husband physically and sexually abused the children and states that Wife sought to confirm the allegations through frequent contacts with counselors, social service and law enforcement agencies and personal acquaintances. In paragraph 17, the judgment states that Wife subjected Lacey to counseling for sexual abuse, but Wife was unable to articulate a specific allegation of abuse against Lacey. Paragraph 19 recites the trial court's finding that Wife has pursued claims of child abuse against Husband with various law enforcement and social services agencies, causing Husband to incur substantial legal expenses.

While the judgment makes general and disparaging references to Wife's allegations of the children's physical and sexual abuse by Husband, it contains no findings as to whether the alleged domestic violence occurred. The judgment fails to include any reference to the many specific acts of alleged violence against the children and, instead, references only a general allegation of sexual abuse against Lacey for which Wife did not provide details. The trial evidence included testimony from several witnesses regarding Husband's manipulation of Lukas' genitals (as reported by Lukas) and injuries the children

sustained as a result of Husband's harsh disciplinary practices, but the trial court made no findings related to these specific allegations of abuse.

The judgment also omits any reference to the evidence indicating that Husband physically abused Wife. Despite substantial evidence of such abusive conduct, the court made no finding as to whether domestic violence occurred against Wife. The volume of evidence in this case precludes any assumption, based on the trial court's silence, that the court found no domestic violence occurred. *See Gant*, 892 S.W.2d at 346. Such a finding would be against the weight of the evidence. *See Mund v. Mund*, 7 S.W.3d 401, 403 (Mo. banc 1999).

We conclude that the trial court erred when it failed to comply with the statutory mandates of Sections 452.375.2(6) and 452.375.13. The record reflects sufficient evidence to require the trial court to make specific findings as to whether domestic violence occurred and, if so, to make additional findings and conclusions regarding a custody arrangement that will serve the children's best interest. We therefore reverse the trial court's judgment on the issue of child custody and remand for a new trial. While we would ordinarily remand to allow the trial court to make findings based on the record, a new trial is appropriate here because the trial judge no longer sits on the Cass County Circuit Court. Moreover, based on our reversal and remand of this case on the grounds in Point 4, a new trial will have to be conducted on the issue of custody.

### Testimony of the Guardian Ad Litem

■ In Point 4, Wife asserts the trial court erred in allowing the Guardian Ad Litem to give unsworn testimony of her custody recommendations that were based on the Guardian's own investigation and inadmissible hearsay opinions from medical professionals. The court overruled Wife's objections to this testimony and refused to allow cross-examination of the Guardian as "an officer of the Court."

■ Pursuant to Section 452.490.4, a trial court may appoint a licensed attorney as a guardian ad litem to serve a child's best interest. In child custody cases, the statute provides that the appointed guardian may "participate in the proceedings as if such guardian ad litem were a party." Section 452.490.4. This provision has been interpreted to mean that a guardian may "call and cross examine witness, make arguments to the court based on admissible evidence at trial, and even to take the stand and testify." *Sanfilippo v. Sanfilippo*, 637 S.W.2d 77, 79 (Mo.App. E.D.1982).

■ Although the guardian is a licensed attorney and, therefore, an "officer of the court," this designation affords no special privileges when the guardian actively participates in a custody proceeding. Even when attorneys testify as witnesses, their testimony must be given under oath, as any other witness. *In re Marriage of Gustin*, 861 S.W.2d 639, 646 n. 6 (Mo.App. W.D.1993). In closing statements, attorneys and guardians are permitted to make legal arguments and factual summations based on the evidence. They are not permitted to give unsworn statements regarding facts not in evidence or disregard the evidentiary rules of admissibility.

In this case, the trial court invited the Guardian ad Litem to "be heard" and "make a recommendation" after the closing summations of Husband's counsel and Wife's counsel. Over the objections of Wife, the court permitted the Guardian to make statements about her out-of-court discussions with medical professionals, who previously testified at trial and recommended a joint custody arrangement with Wife as the primary residential custodian.

The Guardian reported to the court that she had recently spoken with these professionals and that at least two of them now agreed with her final recommendation that Husband should serve as the children's primary residential custodian. This was the only time during the twelve-day trial that any recommendation was made favoring primary placement of the children with Husband. The trial court subsequently awarded sole legal custody of the children to Husband.

We find that the trial court erred in allowing the Guardian Ad Litem to give unsworn testimony and recommendations that were based on inadmissible hearsay medical opinions. The Guardian's statements were not merely a summation of evidence, but rather introduced new facts which the court could not consider without applying the procedural and evidentiary rules to insure competency and reliability. Since the Guardian was neither sworn nor subject to cross-examination, her statements did not constitute evidence and should have had no bearing on the custody decision.

█ Trial courts are permitted wide latitude in the admission of evidence in non-jury cases, and we generally presume the court did not consider incompetent evidence in rendering judgment. *Lee v. Lee*, 967 S.W.2d 82, 86 (Mo.App. W.D.1998). That presumption falters in this case, where there is no other competent evidence to support the trial court's custody award to Husband.

At trial, Husband's evidence largely focused on the unfitness of Wife as primary custodian, rather than his own custodial fitness. He presented a psychological study which concluded that Wife suffered from a "mixed personality disorder ...with features of depression, dependency and histrionics." Husband argued that he was the better custodial parent, given

wife's mental instability. However, the psychologist who conducted the study also diagnosed Husband with a major depression disorder and recommended that the children be placed in Wife's residential custody, with an initial six-month period of supervised visits by Husband. It is therefore apparent that the results of the psychological study did not constitute evidence of Husband's custodial fitness, as he contended.

The admission of the Guardian Ad Litem's statement was prejudicial error because the trial record did not otherwise support the custody award to Husband. *Sanfilippo*, 637 S.W.2d at 79. We therefore, reverse the custody decision and remand for an immediate hearing on the issue of child custody and determinations relative thereto, such as child support.

All concur.