**In re the MARRIAGE OF Victoria DUVALL, Appellant,**

and

**Robert Duvall, Respondent.**

**No. ED 78818.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 13, 2002.

Joseph Howlett, Clayton, MO, for appellant.

Marsha Brady, Hillsboro, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Victoria Duvall ("Wife") appeals the judgment dissolving her marriage to Robert Duvall ("Husband"). We affirm in part and reverse and remand in part.

 We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). We defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, disregarding all contrary evidence and inferences. *In re Marriage of Medlock*, 990 S.W.2d 186, 187 (Mo.App.1999).

Husband and Wife met in 1985 and began living together shortly thereafter at her apartment in Festus. Wife had two children from a previous marriage. Husband owned a home on Woodland Drive in Festus. Husband, Wife and her children moved to his home in March 1987. Husband and Wife were married in December 1988 and their son Jordan was born in July 1990. Wife's name was never put on the deed to the house.

In late 1994, Husband and Wife sold the home on Woodland Drive. They received $64,649 from the house and put $63,321 into the construction of the marital home on Melvin Drive. The home on Melvin Drive was worth approximately $160,000 and Husband and Wife owed $66,500 on it. Both Husband and Wife's names were put on the deed to the house. The family moved there in April 1995.

In June 1996, Wife filed her own petition for divorce, obtained an ex parte order of protection, and had Husband put out of the marital home. Due to Wife's allegations of physical abuse, a guardian ad litem ("GAL") was appointed for Jordan. Husband moved to his parent's home upon being removed from the home on Melvin Drive and lived with them up to the time of trial. Husband continued to make the mortgage payments, as well as the cable, electric and gas payments.

There were considerable arguments and problems over Husband's visitation with Jordan. Husband was allowed visitation supervised by Wife's family in October 1996. Beginning in December 1996, Husband began exercising unsupervised temporary custody on alternate weekends. Husband regularly requested additional time with Jordan, but was put off by Wife. The parties frequently had difficulties and confrontations concerning the transfer of custody of Jordan.

At the conclusion of the trial, the court requested that the GAL give his recommendation as to custody. Wife's trial counsel did not object to this and the GAL recommended joint physical custody as both parties lived in the same school district and were within a bicycle ride of each other's houses. The court entered a shared custody order whereby Husband and Wife were to alternate physical custody of Jordan every month with specified periods of visitation when Jordan was with the other parent.

Wife alleged in her motion for new trial that the judgment was void because she had consulted Husband's trial attorney, Marsha Brady ("Brady"), in June 1997 about representing her at trial. Brady was not representing Husband at the time and she declined to represent Wife for reasons unrelated to the case. Brady later entered her appearance in the case as Husband's attorney. She had no recollection of any conversation with Wife, although she located her notes of their conversation. Wife informed her trial counsel of her interview with Brady as soon as she entered the case in November 1999, but

counsel never filed a motion to disqualify. Wife was aware that two other attorneys had been disqualified from representing Husband because of previous contacts she had with them. The court overruled the motion to disqualify counsel and did not set the decree aside.

Wife's first two contentions on appeal will be considered together. Wife's first claim is that the trial court erred in allowing the GAL to give an unsworn recommendation because it was based on his own investigation which included hearsay from others, and it was just his opinion that a joint physical custody arrangement would be in the Jordan's best interest. Her second claim is that the trial court erred in entering a shared custody order for the reason that the only evidence to support it was the inadmissible opinion of the GAL and there was no other substantial evidence to support it.

■ "It is imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest and this be presented to the trial judge." *In the Interest of J.L.H.*, 647 S.W.2d 852, 861 (Mo.App.1983). Wife admits that she did not object to the GAL's recommendation during trial and therefore, the alleged error is not preserved. However, she requests plain error review. We may consider plain error affecting substantial rights if we find that manifest injustice or a miscarriage of justice has occurred. Rule 84.13(c).

Wife relies on *Dickerson v. Dickerson*, 55 S.W.3d 867 (Mo.App.2001), for the proposition that the trial court committed plain error. In *Dickerson*, during the trial, medical professionals recommended a joint custody arrangement with the wife as the primary residential custodian. *Id.* at 874. However, at the time the GAL made her recommendation, she reported to the court that she had recently spoken with the medical professionals and that at least two of them now agreed with her final recommendation that the husband should serve as the children's primary residential custodian. *Id.* at 875. The wife objected to the GAL referring to her out-of-court discussions with the medical professionals. *Id.* at 874. This was the only time during the trial that any recommendation was made favoring primary placement of the children with the husband. *Id.* at 875. The court held:

> We find that the trial court erred in allowing the Guardian Ad Litem to give unsworn testimony and recommendations that were based on inadmissible hearsay medical opinions. The Guardian's statements were not merely a summation of evidence, but rather introduced new facts which the court could not consider without applying the procedural and evidentiary rules to insure competency and reliability. Since the Guardian was neither sworn nor subject to cross-examination, her statements did not constitute evidence and should have had no bearing on the custody decision.

*Id.*

■ In the instant case, the GAL stated that the evidence showed that having one person with primary custody had not worked well because the parties had frequent confrontations over visitation.[1] The GAL further observed that joint physical custody might be a good alternative because both parties lived close together in

1. Wife had custody of Jordan up to and during the trial. There was evidence that she would not bring Jordan to Husband for his visitation on time, even when Husband was taking a trip, and she was at times unreasonable when Husband requested slight variations in his visitation. Likewise, there was evidence Husband at times made the transfer of Jordan's custody difficult for Wife by being confrontational and combative.

the same school district and that Jordan genuinely loved them both and wanted them both in his life. Finally, the GAL acknowledged that it would be impossible to get around the temporary visitation issue but that Jordan should have a fairly permanent place where he would be for more than a few weeks at a time. We conclude that at no time did the GAL refer to inadmissible testimony or refer to any evidence not received at trial, as occurred in *Dickerson*. Therefore, the trial court did not commit plain error in permitting the GAL to give his recommendation. Nor did the trial court err in relying on the GAL's recommendation as the recommendation was supported by evidence received at trial. Points one and two are denied.

Wife's third point is that the trial court erred in failing to make written findings detailing specific relevant factors as to why its shared physical custody arrangement was in the best interest of the child and why he rejected the proposed custody arrangements requested by each party. Wife argues that these written findings are required by section 452.375 RSMo 2000.[2]

■ Section 452.375.6 provides:

If the parties have not agreed to a custodial arrangement, or the court determines such arrangement is not in the best interest of the child, the court shall include a written finding in the judgment or order based on the public policy in subsection 4 of this section and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the court, the court shall include a written finding in the judgment or order detail-

ing the specific relevant factors resulting in the rejection of such arrangement. Husband concedes error on the part of the trial court. This court faced a similar situation in *Sleater v. Sleater*, 42 S.W.3d 821 (Mo.App.2001). We reversed and remanded the trial court's determination of custody, holding that it "made no such findings; therefore, the trial court's judgment does not comply with section 452.375.6" *Id.* at 824. In accordance with *Sleater*, we reverse the custody provisions of the decree and remand for entry of written findings as required by section 452.375.6.

Wife's fourth contention on appeal is that the trial court erred in setting off to Husband $52,000 as his premarital contribution to the Melvin Drive property and awarding her $21,000, or one-half the value of the property. Wife claims the set-off was not a fair and equitable division of the marital property.

■ The trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). Section 452.330 provides factors for the trial judge to consider when dividing marital property:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

2. Unless otherwise indicated, all statutory references are to RSMo 2000.

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

■ In its judgment and decree of dissolution of marriage, the trial court adopted $160,500 as the fair market value of the marital home on Melvin Drive. The debt at the time was approximately $66,500. The court found that over $63,000 realized from the sale of Husband's premarital home on Woodland Drive was contributed to the purchase of the marital home and that Husband and Wife added $11,000 of value to the house while living on Woodland Drive. The court found it equitable to offset $52,000 for Husband's premarital contribution from the marital equity in the Melvin Drive property to be divided between the parties. Therefore, the court fixed the marital equity at $42,000, awarded one-half that amount to Wife, and awarded Husband the marital home. The court noted that Husband made significant financial contributions of marital assets to the marital estate. Moreover, Wife had been living in the marital home throughout the parties' four-year separation and Husband had paid the mortgage, utility and cable bills the entire time. Wife was awarded $21,000, which represented her equity in the marital home, and which the trial court found would be an adequate amount for a down payment on another home. We conclude the trial judge did not abuse his considerable discretion in setting off $52,000 to Husband as his contribution to the marital property on Melvin Drive. Point denied.

■ Wife's fifth contention on appeal is that the trial court erred in overruling her motion to declare the judgment void because Wife consulted with Husband's trial counsel before she became Husband's counsel and asked counsel to represent her. Counsel declined to represent her because of a scheduling conflict. Wife claims that counsel's representation of Husband was and is a breach of fidelity and a conflict of interest, which constitutes constructive fraud rendering the judgment void.

Wife relies on *Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731 (1950). In *Cottey*, the attorney who was representing the husband prepared a property settlement for both the husband and wife, which removed a significant amount of the wife's property rights. *Id.* at 735–36. The court held that the contract was "illegal, void and against public policy," noting that "[a] breach of fidelity to a client's interest constitutes constructive fraud." *Id.* at 738–39. We conclude that *Gardine* is inapposite to the instant case. Here, Husband's attorney did not essentially represent both Husband and Wife at the same time, as was the case in *Gardine*. Rather, as this court has previously held:

A motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent the party from using disqualification as a strategic tool to deprive his opponent of counsel of his choice after substantial preparation has been completed. One who knowingly refrains from asserting the objection promptly is deemed to have waived the objection. The purpose of the Canons of Ethics is to regulate the conduct of counsel, not a weapon to be used against the attorney's client.

*Terre Du Lac Property Owners' Assoc., Inc. v. Shrum*, 661 S.W.2d 45, 48 (Mo.App. 1983) (holding motion filed two weeks after case was fully tried to be untimely). *See also, State of Missouri, ex rel. Wallace v. Munton*, 989 S.W.2d 641, 647 (Mo.App.

1999) (court noted that complaining party did not file his motion to disqualify until almost two years after he filed the petition); *Mehrle v. Mehrle,* 813 S.W.2d 886, 890 (Mo.App.1991) (party waited nine months to file his motion to disqualify).

In the present case, Wife was aware that she had spoken with Brady in November 1999, when Brady entered her appearance. The trial was held for a total of six days during February 2000 and July 2000. Yet Wife did not file a motion to disqualify Brady until November 2000, when she filed her motion for new trial. Wife was aware that two other attorneys retained by Husband were disqualified; therefore, she was familiar with the process. She claims that she told her attorney at the time that Brady entered her appearance. The record also reflects that Brady testified she had no recollection of meeting with Wife, although she did obtain her notes from her meeting with Wife. She further testified that the brevity of her notes suggested that she spoke with Wife for twenty to thirty minutes and that Wife gave her no confidential information. We conclude that the trial court did not err in overruling Wife's motion to declare the judgment void.

The judgment of the trial court is reversed and remanded in part with instructions to make written findings in compliance with section 452.375. In all other respects, the judgment is affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., Concur.