**Brendan D. SEWELL–DAVIS by His Next Friend Russell E. Davis, and Russell E. Davis, Individually, Respondent,**

v.

**Jennifer Sewell FRANKLIN, Appellant.**

**No. WD 64710.**

Missouri Court of Appeals,
Western District.

Oct. 25, 2005.

awarded her joint physical and joint legal custody of her biological child, Brendan, with the child's biological father, Russell E. Davis (Father), and designated Father's as the child's primary residence.

Brendan was born in November 2000. He has cerebral palsy. Brendan's parents, who have never been married, lived together intermittently both before and after his birth. The couple separated for the final time in January 2003, when Brendan was just a little over two years old.

Father brought a petition seeking a declaration of paternity, custody, and support. A bench trial was held, and the court entered judgment in July 2004. The court determined that Brendan was Father's biological child and awarded joint legal and joint physical custody to the parties. The court adopted Father's proposed parenting plan and designated his residence as the child's primary residence. The court awarded Mother specific periods of custody and ordered her to pay child support.

On appeal, Mother alleges four instances of trial court error. We remand for additional findings.

## Standard of Review

■ As in other court-tried cases, we will affirm the trial court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Loumiet v. Loumiet,* 103 S.W.3d 332, 335–36 (Mo.App.2003) (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). The trial court is afforded broad discretion in awarding child custody, and we will affirm its decision unless we are firmly convinced that the welfare of the child requires a different disposition. *Id.* at 336.

Edward Leon Campbell, Kirksville, MO, arguing on behalf of appellant.

Howard Madison Hickman, Kirksville, MO, arguing on behalf of respondent.

Before JAMES M. SMART, JR., P.J., HAROLD L. LOWENSTEIN, and LISA WHITE HARDWICK, JJ.

PER CURIAM.

Jennifer Sewell Franklin (Mother) appeals the trial court's judgment that

### Lack of Findings on Custody

In her first point, Mother argues that the trial court erred in failing to make specific findings with regard to its decision to award joint physical and legal custody to the parties. Mother says the court was required under section 452.375.6, RSMo,[1] to make specific findings because the parties failed to agree as to custody and because the court rejected Mother's proposed custody arrangement.

Where the parties have not agreed to a custodial arrangement, section 452.375.6 requires the court to include written findings in the judgment based on the public policy set forth in section 452.375.4.[2] The court is to consider all relevant factors, including the factors listed in section 452.375.2(1)-(8).[3] *See* § 452.375.6. In view of the public policy of the State that children should have "frequent, continuing and meaningful contact with both parents," if the parties have not agreed to a custodial arrangement, the court shall include a finding as to the matter of frequent, continuing and meaningful contact with the parents, and also a finding detailing the specific relevant factors that made a particular arrangement in the best interest of the child. § 452.375.6. Subsection .6 further provides that such findings must be made if the court rejects a proposed custodial arrangement offered by both parents.

With regard to the section 452.375 findings, the trial court in this case stated only that "[e]ach of the applicable and relevant factors in subdivision 1–8 as set forth at § 452.375.2 were duly considered in accordance with the best interest of the child." The court did not make a finding as to the need to promote frequent, meaningful contact with both parents; nor did the court refer to or describe the factors it determined to be relevant.

According to Mother, while Father had requested *joint physical* and *legal* custody, she was seeking *sole physical* custody and *joint legal* custody. Mother submitted a proposed judgment and parenting plan in

---

1.  All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise indicated.

2.  Section 452.375.4 provides, in relevant part: The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child ..., and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

3.  The section 452.375.2 factors are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan[s] ...;
(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their [parental] functions ...;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved ....;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian.

which she requested joint legal custody and "primary physical custody." Although Mother inadvisedly used the term "primary physical custody," she actually, she says, was requesting "sole physical custody." She points out that she clearly and specifically asked for *sole* physical custody at trial.

Father says the court was not required to make specific findings under section 452.375.6, because the parties *did agree* as to the custodial arrangements, but only disagreed about the actual parenting time (*i.e.*, visitation time) and the primary residence. He argues that Mother's plan, in essence, was for joint physical and legal custody, with hers designated as the primary residence. Father suggests that both parties were seeking joint physical custody because the parenting plans contained similar schedules, with schedules reversed as to the respective parents.

Father relies upon *Simon–Harris v. Harris*, 138 S.W.3d 170, 178 (Mo.App. 2004), for the proposition that where parties have agreed to joint physical custody but only disagree as to the division of parenting time, the court is not required to make the findings required by section 452.375.6. Because we have a contest of semantics, it is not clear that *Simon–Harris* applies here. Despite the ambiguity of Mother's proposed judgment and parenting plan, she did, at trial, in fact ask for sole physical custody. In any event, the semantic contest may be irrelevant. In *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005), the parties had agreed on joint physical and legal custody, but they did not agree on the residence

address for the child or on a parenting plan. *Id.* The Court said:

> While these may be sub-issues of custody, they were contested and required the court's resolution. So long as any issue or sub-issue of custody is subject to contest between the parties and resolution by the court, written findings that include discussion of the applicable factors from section 452.375.2 are required.

*Id.* The Supreme Court reversed the judgment and remanded the case for findings.

*Buchanan* governs this case. Father acknowledges that the parties did not agree on the parenting plan, the visitation arrangements, or the child's primary residence. Thus, as in *Buchanan*, the trial court was mandated by section 452.375.6 to make findings based on the public policy set forth in section 452.375.4 and the specific relevant factors that made the custody arrangement in the child's best interests.

The judgment is reversed, and we remand to the trial court with instructions to make those mandatory findings.[4]

### *Ex Parte* Communications

■ Mother next argues that the trial court erred in failing, *sua sponte*, to recuse itself or to grant her request for a new trial on the basis of the court's inappropriate *ex parte* communications with Father and Father's attorney on the day of trial.

At a hearing on Mother's motion for new trial, Mother presented two witnesses who both testified that they witnessed an *ex parte* communication between the trial judge, Father, and Father's attorney in the hallway on the day of trial. One wit-

---

4. This court noted in *Davidson v. Fisher*, 96 S.W.3d 160, 164 (Mo.App.2003), that the court, in considering section 452.375.2(1)-(8), need not comment on or make findings on any factors that clearly are not relevant.

However, the court must make findings on the factors that *are* relevant. The public policy of frequent, continuing, and meaningful contact must always be included in the findings. § 452.375.6.

ness said the judge spoke "briefly" to Father and Father's attorney. One witness said the judge stood and talked for "about five minutes." Both had the belief that it was against the rules, and unfair, for the judge to talk to only one side, regardless of the subject matter. The alleged communication took place during the lunch break, just before the presentation of Mother's evidence. The court examined the witnesses about the witness' observation of the encounter, but did not at that time either refute the allegation or explain the nature of the communication. With his response to the new trial motion, Father submitted three affidavits from his family members stating that "no meeting whatsoever" took place. Father presented no testimony at the hearing. At oral argument, Father concedes that there was a communication between the court, Father's attorney, and Father, but contends that the suspicions of Mother's witnesses were incorrect.

Mother says the court was obliged to recuse itself, *sua sponte*, under both Canon 3B(7) and Canon 2 of Rule 2.03.[5] Canon 3B(7) prohibits a judge from initiating, permitting or considering *ex parte* communications or "other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding" with a few exceptions that are not applicable here. The Commentary states: "To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge." Rule 2.03, Canon 3B(7). Canon 2 requires a judge to avoid impropriety and the appearance of impropriety in all his activities. Provision A says, "[a] judge shall ... act at all times in a manner that promotes public confidence in the integrity and im-

partiality of the judiciary." The Commentary says, "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." Rule 2.03, Canon 2A.

Father states that even if a communication did take place, Mother has failed to show that the alleged *ex parte* communication was about a matter pending before the court, as required under Canon 3B(7). He notes that the record does not show what the subject matter of the alleged *ex parte* communication was, nor what information was communicated. With regard to Canon 2, Father points out that the appearance of impropriety is to be measured objectively based on whether a "reasonable" person would have questioned the impartiality of the judge. *See In the Interest of K.L.W.*, 131 S.W.3d 400, 405 (Mo. App.2004). He says Mother's two witnesses, one of whom was her mother, were in no way objectively reasonable because they were closely allied with Mother.

■ Mother argues that the judge should have either denied that the communication took place, or have explained it on the record, or have recused himself once the allegation was made, citing *Smulls v. State*, 10 S.W.3d 497 (Mo. banc 2000). In *Smulls*, the Supreme Court stated, in *dictum:* "When the record reflects facts indicating potentially improper extra-judicial communications ..., the judge should make a statement on the record refuting or explaining the allegations, or the judge should recuse." *Id.* at 505 n. 7. We agree that where bias is alleged as a result of alleged *ex parte* communications between one of the parties and the court, the judge

---

**5.** All references to Rules are to Missouri Court Rules, 2005, unless otherwise indicated.

should "err on the side of caution" by placing on the record the pertinent facts showing no objectively reasonable concern. If there is an objectively reasonable concern, the judge, of course, should remove such concern by recusal. *See Interest of K.L.W.*, 131 S.W.3d at 405.

The trial court here correctly noted that although this alleged contact happened *during* the trial, no one raised it until after the court's decision. The court took no action to address the allegation, leaving it merely "hanging in the air." Granted, because the communication took place in the hallway, in public, in sight of Mother's witnesses, it is not clear that a person experienced in the legal system would have believed that the communication showed bias. It is not difficult, for instance, to imagine a judge asking merely about the number of witnesses anticipated to testify that afternoon, or something of that nature. However, the failure of the court to comment on the matter did nothing to help alleviate fears of partiality. Also, because the court did not rule on the new trial motion within ninety days, the motion was overruled by operation of Rule 78.06. Although the trial court may not have intended to avoid making a response to the allegation of an improper *ex parte* communication, because of the effect of the lapse of time, no findings were made in regard to the alleged *ex parte* communication.

This court understands that a communication of some kind took place, but has no information as to the nature of the communication. We do understand that there was no attempt to be surreptitious, and that Mother's two witnesses apparently had the notion that judges, like jurors, are strictly forbidden to communicate with lawyers outside of court other than to offer a greeting. Moreover, we are aware that the issue was not raised until after the

court made its decision. Nevertheless, such allegations should not go unanswered, even if raised after the fact, because litigants are entitled to understand facts that will provide reasonable confidence in the process. Because we are remanding for detailed findings on the custody arrangements, we believe the court should make a statement on the record as to the pertinent facts showing no objectively reasonable concern as to bias, or should remove any such concern by recusal.

### Domestic Violence Findings

■ Mother argues, in her third point, that the court's failure to make findings regarding domestic violence under section 452.375.2(6) or section 452.375.13 was against the weight of the evidence.

Section 452.375.2(6) requires the court, in determining what custodial arrangement is in the child's best interest, to consider the mental and physical health of all individuals involved, including any history of abuse. That subdivision further provides:

> If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law.

*Id.* Pursuant to section 452.375.13,

> If the court finds that domestic violence or abuse ... has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other family or household member who is the victim of domestic violence or abuse ... and any other children ... from any further harm.

There are significant differences in the two provisions. While section 452.375.2(6) re-

quires both findings of fact and conclusions of law, section 452.375.13 requires only findings of fact to support the court's order as to custody or visitation. *Loumiet,* 103 S.W.3d at 343. Additionally, under section 452.375.2(6), the court is required to make specific findings if it finds a *pattern* of domestic violence and also finds that placing the child in the abuser's custody is in the child's best interest. To trigger the mandated findings under section 452.375.13, the court need find only that domestic abuse *has occurred.* This "logically would include a single isolated incident of domestic violence or abuse." *Loumiet,* 103 S.W.3d at 343.

Section 452.375 does not define "domestic violence," but this court previously has instructed courts to consider the following regarding that term: "the parent's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault on other persons." *See Dickerson v. Dickerson,* 55 S.W.3d 867, 872 (Mo.App.2001) (*quoting* § 452.400.1, on visitation rights).

Mother says both parties presented testimony about incidents that qualify as domestic violence or abuse and thus required findings by the court. Both parties presented evidence of arguing, name calling, pushing, and shoving. Mother testified that Father had physically prevented her from leaving the house and had ripped the telephone cord out of the wall to prevent her from calling the police. One of the altercations resulted in Mother obtaining an order of protection. The Adair County Sheriff testified about a "domestic disturbance" that he described as a "bad situation." Father had thrown Mother's belongings outside the home. The Sheriff stated that Father was "highly agitated and aggressive" and that the parties needed to be separated. Mother was pregnant at the time. Mother testified that Father had shoved her down on the couch when she was pregnant. Father denied this. Mother also testified and offered documentary evidence that Father had punched a hole in the wall of their home. Mother says even if the court did not believe this evidence presented a pattern of abuse, the court could not have found that no abuse occurred at all, as such a finding would be unsupported by the evidence. *See Dickerson,* 55 S.W.3d at 874. Thus, at a minimum, the court was required to make findings pursuant to section 452.375.13, she says.

Father points out that he denied physically abusing Mother and refuted all the allegations of domestic abuse except that he broke Mother's telephone in anger and that Mother shoved him and knocked his glasses off. Father excuses the order of protection by stating that he "consented" to it. It is unclear whether he means simply that he did not contest it. Father observes that both sections 452.375.2(6) and .13 require the court to make specific findings only after it finds a pattern of domestic violence or finds that domestic violence has occurred. Because the trial court made no such findings here, Father says this court can infer, pursuant to Rule 73.01(c),[6] that the court found no evidence that domestic violence or abuse had occurred.

Mother acknowledges that the court made no finding that domestic violence or abuse had occurred. She says, though, that the court's failure to make such a finding was against the weight of the evidence. She relies on *Dickerson,* in which the court held: "Compliance with the re-

---

**6.** Rule 73.01(c) provides in relevant part: "In cases tried without a jury ... [a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

quirements of subsections 452.375.2(6) and 452.375.13 is mandatory. If the record reflects evidence of domestic violence, the trial court must make written findings consistent with these statutory provisions." *Id.* at 872.

The trial court in *Dickerson* made no findings as to domestic violence, but the appellate court found ample evidence of domestic violence in the record. *Id.* At trial, the wife related numerous incidents where her husband had shoved, threatened, pushed down, and forcibly restrained her and other family members. *Id.* There was evidence that he had bruised and cut her, nearly hit her with a car, and attempted to push her out of a moving vehicle. *Id.* at 872–73. Testimony also was presented regarding the husband's abuse of the children, including sexual abuse. *Id.* at 873. The husband denied being abusive, but the appellate court found that the conduct he did admit fell within the definition of domestic violence. *Id.* Some of that conduct is similar to that alleged in this case, *e.g.*, pushing his wife out the front door, punching a hole in the wall, shoving his wife down on the couch, and snatching a telephone out of her hand to prevent her from calling the police. The husband in *Dickerson* also consented to the entry of a full order of protection. *Id.* The appellate court concluded: "The volume of evidence ... precludes any assumption, based on the trial court's silence, that the court found no domestic violence occurred. Such a finding would be against the weight of the evidence." *Id.* at 874 (citation omitted). The case was remanded for specific findings on the issue of domestic violence or abuse. *Id.*

In *Marquez v. Marquez,* 136 S.W.3d 574, 580 (Mo.App.2004), the trial court noted that there was testimony about domestic violence, primarily by the wife against the children, and acknowledged that she had denied those allegations. Still, the court made no specific findings as to whether domestic violence had occurred. The appellate court held: "[N]otwithstanding our belief that the court considered the evidence and made its custody determination with the children's best interests in mind, we are constrained to remand the case so that the court may make determinations that will comply with the requirement of section 452.375.13." *Id.* at 580–81.

The judgment in this case makes only a slight allusion to the allegations of abuse and domestic violence, stating: "Both parties testified in painstaking detail concerning the shortcomings of the other parent. But neither advanced probative evidence that would show their existing acrimony and bitterness has had a negative impact on the well-being of the child." The judgment does not include the specific findings of fact regarding domestic violence required by section 452.375, however.

It is a close call as to whether the trial court erred in failing to make specific findings regarding domestic violence and abuse in this case. The *Dickerson* and *Marquez* opinions suggest that such findings were necessary. Because of the legislature's "justified concern" about the potential danger domestic violence poses for children, strict compliance with these statutes is warranted. *See Loumiet,* 103 S.W.3d at 344; *see also Dickerson,* 55 S.W.3d at 872 (non-discretionary nature of these provisions reflects legislative resolve that courts should consider domestic violence in making determinations on child custody and visitation). Again, because we are remanding for additional findings as to the custody arrangement, the court on remand should either make an explicit finding that no abuse or domestic violence occurred or, if it did occur, make the required statutory findings in this regard.

## Guardian ad Litem

Mother argues in her final point that the court erred by failing, *sua sponte*, to appoint a guardian ad litem based on allegations of child abuse or neglect, as required by section 452.423.

Section 452.423.2 states that the "court *shall* appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." (emphasis added). For purposes of section 452.423, child "abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child ... by those responsible for his care, custody, and control except ... discipline including spanking, administered in a reasonable manner." *Rombach v. Rombach*, 867 S.W.2d 500, 504 (Mo. banc 1993). "Neglect" is defined as the "failure to provide by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for his well-being." *Id.*

Mother says there was testimony at trial that amounted to allegations of abuse and neglect by both parties. As evidence of neglect, Mother cites Father's testimony that Mother's migraine headaches and depression prevent her from properly caring for Brendan, that she confines the child in his room while she is sleeping, and that she keeps a loaded gun in her house. She also cites her own testimony that Brendan burned his hand on a lawnmower at her house. Mother says evidence of abuse can be found in her testimony that Father "overpowered" her to prevent her from leaving while she was holding Brendan in her arms, that Father pushed her while she was holding Brendan, and that Father "pops" Brendan in the back of the head to make him mind.

Father points out that not only did neither party request appointment of a guardian ad litem, but neither raised allegations of abuse or neglect in any of their pleadings. He says the only allegations of abuse or neglect came in through testimony at trial, and that testimony did not rise to the level that would require the court to appoint a guardian ad litem, *sua sponte*. Father contends that his actions toward Mother while she was holding Brendan evidenced no hostility or anger toward the child. He also notes that he refuted Mother's testimony about his discipline of Brendan. At any rate, Father says, it was clear that neither party considered those allegations to be about abuse or neglect in their testimony at trial.

Mother acknowledges that neither party requested appointment of a guardian ad litem. But she points to *White v. White*, which states that even if the parties do not request appointment of a guardian ad litem, the trial court commits error by not doing so, *sua sponte*, when abuse or neglect is alleged. 952 S.W.2d 320, 322 (Mo. App.1997) (*citing Gilman v. Gilman*, 851 S.W.2d 15, 17 (Mo.App.1993)).

Generally, such allegations must be raised in the pleadings. *See Rombach*, 867 S.W.2d at 503 (mandatory appointment of guardian ad litem "is triggered only by an allegation of child abuse expressly stated in a pleading and not by the mere introduction of evidence at trial"). The *Rombach* Court noted, however, that the analysis could not end there. It went on to consider Rule 55.33(b), which provides for the amendment of pleadings to conform to the evidence at trial. *Id.* The Court concluded:

> If sufficient evidence exists that, if believed, shows actual abuse or neglect occurred, the court, either upon motion of a party or *sua sponte*, should order the pleadings amended to conform to the

evidence and appoint a guardian ad litem.

*Id.* at 504. Here, Mother notes that the parties testified to incidents of abuse and neglect without objection at trial. Relying on *Rombach,* Mother says the issues were tried by the express or implied consent of the parties and the allegations, therefore, should be treated in all respects as if they had been raised in the pleadings.

It is unnecessary for us to decide that issue at this time. We gratuitously note that on remand the parties will have the opportunity to revisit the need for appointment of a guardian ad litem and that Mother may file any additional motion, in proper form, for such an appointment at that time. *See Walters v. Walters,* 113 S.W.3d 214, 219 (Mo.App.2003); *cf. Speer v. Colon,* 155 S.W.3d 60, 62 n. 10 (Mo. banc 2005) (parties encouraged to "revisit" motion for order of contempt on remand for additional findings as to custody).

### Conclusion

For the foregoing reasons, the judgment is reversed and remanded. On remand, the trial court is instructed to make the required written findings in compliance with sections 452.375.6 and 452.375.13, to make findings with regard to Mother's allegations of *ex parte* communications, and to take whatever other action it deems appropriate.