

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| M.M., | ) | No. ED110317 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 19JE-DR00586 |
| | ) | |
| C.S., | ) | Honorable Troy A. Cardona |
| | ) | |
| Appellant. | ) | Filed: May 16, 2023 |

## Introduction

C.S. (Father) appeals the judgment of the trial court in the underlying paternity suit awarding him supervised visitation with one of the parties' minor children, O.S., for four hours every other Saturday. Father argues the judgment in this respect is unsupported by substantial evidence, and that the trial court improperly relied on statements from the guardian ad litem (GAL) for the children that constituted unsworn testimony and were based on facts not in evidence. We reverse the trial court's judgment as it relates to the visitation schedule for O.S. and remand for further proceedings.

## Background

On June 28, 2019, Respondent M.M. (Mother) filed her Petition for Determination of Father and Child Relationship and Order of Custody and Support. Mother sought an

order finding Father to be the biological father of D.S., I.S., and O.S., and she sought an award of joint legal and joint physical custody. The trial court held a trial on September 23, 2021, at which the trial court heard the following evidence, as relevant to this appeal.

Mother and Father have three children: D.S., who was 18 years old at the time of trial; I.S., who was 13 years old; and O.S., who was 6 years old. Mother and Father were never married. They lived together with their children in Bloomsdale, Missouri until August of 2017, when Father and the children moved out. Mother remained in their apartment in Bloomsdale until February of 2018, when she moved to St. Louis. At some point, Mother got married, and she and her husband (Husband) moved to Festus in May of 2019. During those almost two years, between August of 2017 and May of 2019, the children resided with Father. Nearly every other weekend, Father brought O.S. to see Mother either in St. Louis or they would meet in Festus, but their older two children refused to come.

In March of 2019, Father made a hotline call, and later a medical doctor made another hotline call, both reporting that O.S. had disclosed choking and inappropriate sexual touching by Mother's Husband. Father no longer allowed O.S. to spend the night at Mother's house, but he did continue to arrange visitation with Mother if Husband was not present. During the pendency of the underlying paternity suit as well, the trial court entered temporary visitation orders that required Husband not to be present during Mother's visitation. The Missouri Department of Social Services' Children's Division eventually determined that the allegations against Husband were unsubstantiated. The trial court accordingly altered its temporary custody order to remove the restriction that Husband must not be present. However, Father did not follow the court's order to allow

2

the children to be with Mother if Husband was present, for which the trial court eventually found Father in contempt.

Jordan Seyer (Seyer), a play therapist who saw O.S. for 21 sessions testified that she could not give an opinion regarding whether the allegations against Husband were true, but she stated that O.S. was inconsistent in his disclosures. Seyer also could not give an opinion regarding whether she believed O.S. had been coached, but she did testify that Father tried to persuade her regarding whether the allegations were true. Father had also rescinded his permission for Seyer to speak with Mother at some point, so Mother had only been permitted to attend 7 sessions. Finally, Seyer testified she could not offer an opinion on which parent O.S. should live with, but she said O.S. shared different desires, at times saying he wanted to live with Father and at times saying he wanted to live with Mother.

Mother submitted a proposed parenting plan to the trial court that called for joint legal custody and joint physical custody following a 2-2-3 visitation plan,[1] with the parties having essentially equal physical custody with the children. Mother testified that Father was a good father, but she desired that he cease discussing the court proceedings and the allegations against Husband with the children.

At the close of the evidence, the children's GAL gave an oral recommendation to the trial court. In it, she noted she spoke with a counselor who had been seeing the parties' two older children, a Children's Division investigator, and another play therapist who had initially worked with O.S., none of whom testified at trial. The GAL also noted she reviewed text exchanges between Mother and Father, which were not submitted as

[1] A 2-2-3 visitation plan generally calls for the children being with one parent every Monday and Tuesday, the other parent every Wednesday and Thursday, and alternating spending every other weekend with each parent.

3

evidence during trial. The GAL stated that she believed Father coached O.S. to make allegations against Husband. The GAL recounted her conversation with O.S.'s first play therapist, stating that O.S. did not give the play therapist details about the allegations against Husband, but O.S. did frequently repeat that Mother was bad. When the play therapist would ask O.S. about Mother out of context of these statements, O.S. would talk about the fun he had with Mother and that he loved her.

The GAL also stated that while Mother and Father have been able to work together in the past, the GAL also believes Father sometimes intentionally excludes Mother. She stated Father inappropriately discusses the allegations against Husband and the court proceedings with the children, and he has shown he is not afraid to disregard court orders. The GAL recommended that Mother have sole legal custody. Regarding physical custody, she stated she was "on the fence." She concluded by recommending supervised visits for O.S. because, in her view, Father's manipulation of O.S. would continue, resulting in additional hotline calls and O.S. being coached. She also believed regardless of what the court ordered, Father would continue his behavior. However, she did recommend Mother's proposed visitation schedule as it related to I.S., because she did not know "if his relationship with his mom is really in a place to exclude and only have supervised visits."

The trial court entered a judgment finding that Father was the natural father of D.S., I.S., and O.S. The court's judgment further ordered that Mother should have sole legal custody of the children, and the court awarded visitation as recommended by the GAL. Specifically, the trial court ordered a 2-2-3 schedule as it relates to I.S., but only four hours of supervised visitation every other weekend as it relates to O.S.[2] The trial court found

---

[2] Because D.S. was 18 years old at the time of trial and was not a student, the trial court noted he was an emancipated adult and was not subject to the custody order.

4

that "Father's conduct and continuing manipulation and alienation of [O.S.] would be detrimental to the health, psychological and physical well-being of the minor child." The court further noted that it "relied heavily on the testimony and the recommendation of the [GAL]" in coming to this conclusion. This appeal follows.

## Standard of Review

In this court-tried case determining custody, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Besancenez v. Rogers, 100 S.W.3d 118, 122 (Mo. App. E.D. 2003). "The trial court possesses broad discretion in child custody matters, and its decision will only be reversed if we are firmly convinced the welfare and best interests of the child require otherwise." Id.

## Discussion

Father's sole point on appeal is that the trial court's order restricting Father's visitation with O.S. to four hours of supervised visitation every other Saturday is unsupported by substantial evidence.[3] We agree.

Section 452.400.1(1), RSMo. 2016 provides, "[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." This section applies when a trial court orders supervised visitation. Baker

---

[3] Father adds that the judgment is against the weight of the evidence as well. We note that this is a separate ground for relief, and subject to different principles of appellate review. See Ebert v. Ebert, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021) (noting each ground for relief under Murphy v. Carron, 536 S.W.2d 30, 36 (Mo. banc 1976) "requires a distinct analytical framework"). Rule 84.04 requires appellants to limit their points on appeal to one ground for relief. Id. However, here, Father's argument is focused on the lack of substantial evidence to support the trial court's custody order regarding O.S. Where an argument is readily discernable, we have discretion to review an argument on appeal even if the point relied on does not technically comply with Rule 84.04. Id. at 585. We choose to do so here, where Father has adequately set forth a claim of reversible error on the ground that the trial court's judgment is unsupported by substantial evidence. See id.

v. Gonzalez, 315 S.W.3d 427 (Mo. App. S.D. 2010). Here, the trial court found that "Father's conduct and continuing manipulation and alienation of [O.S.] would be detrimental to the health, psychological and physical well-being of the minor child." Our question is whether this finding is supported by substantial evidence.

The trial court stated that it "relied heavily on the testimony and the recommendation of the [GAL]" in making its custody order. However, the GAL did not offer any sworn testimony. Rather, at the close of the evidence, the GAL gave an oral recommendation to the trial court.

> In closing statements, attorneys and guardians are permitted to make legal arguments and factual summations based on the evidence. They are not permitted to give unsworn statements regarding facts not in evidence or disregard the evidentiary rules of admissibility.

Dickerson v. Dickerson, 55 S.W.3d 867, 874 (Mo. App. W.D. 2001). Here, the GAL referred to several facts not in evidence during her oral recommendation to the court. These included statements by a Children's Division investigator who told the GAL that Father refused to leave the room while the investigator interviewed O.S., and that was the only time O.S. made a disclosure about Mother's Husband. Additionally, the GAL referred to statements by the first play therapist O.S. saw, who said that O.S. did not make any allegations regarding Husband and simply repeated that Mother was bad, but he would share about having fun with Mother when asked in a different context. The GAL stated her opinion that neither of the play therapists believe the allegations against Husband are true, though neither therapist offered any testimony on that issue. The GAL's statements here were not simply a summation of the evidence, rather they referred to facts outside the evidence, which the court could not consider absent application of procedural and

6

evidentiary safeguards. Id. at 875. "Since the guardian was neither sworn nor subject to cross-examination, her statements did not constitute evidence and should have had no bearing on the custody decision." Id.

Absent the GAL's impermissible statements, the trial court's custody determination is unsupported by substantial evidence. Seyer testified that she was unable to offer an opinion regarding whether Father coached O.S. or whether O.S. had been molested by Husband. Mother's proposed parenting plan called for the parties' equal physical custody of O.S., and she testified that she believed C.S. was a good father despite desiring him to refrain from discussing court matters with the children. No expert offered an opinion or other witness testified regarding either physical or emotional harm to O.S. There simply is not enough evidentiary support in the record for the trial court's Section 452.400.1(1) finding of endangerment to O.S.'s physical health or impairment of his emotional development justifying such a draconian reduction of Father's visitation rights with O.S. to four supervised hours every other week.

Moreover, the evidence showed that O.S. lived almost exclusively with Father for the two years prior to Mother filing the present action. O.S. was only six years old at the time of trial and had also been diagnosed with autism. The trial court's order drastically reducing O.S.'s time with his father to four hours every other week effectively removed O.S. from Father, his primary caregiver for the previous four years. We cannot see how such a result is in the best interests of O.S. Mother had not asked the court for this result, and the court was clear it did so based on the GAL's statements. Because such statements were improper, and the trial court's conclusion is not otherwise supported by substantial

7

evidence in the record, we must reverse this portion of the trial court's judgment. Point granted.

## Conclusion

We reverse the trial court's custody order regarding O.S., and we remand for a hearing on this issue. In all other respects, the trial court's judgment is affirmed.

_Gary M. Gaertner, Jr._

Gary M. Gaertner, Jr., P.J.

John P. Torbitzky, J., and
Cristian M. Stevens, J., concur.

8